Alton Craig JORDAN, Appellant,

v.

The STATE of Texas, State.

No. 2–93–247–CR.

Court of Appeals of Texas,
Fort Worth.

June 22, 1994.

Wes Ball, Arlington, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section; Danielle A. Legault, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before LATTIMORE, WEAVER and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, Alton Craig Jordan, was convicted by a jury of the offense of aggravated robbery. *See* TEX.PENAL CODE ANN. § 29.03 (Vernon Supp.1994). The jury assessed punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. On appeal Jordan raises four points of error contending that the trial court erred in: (1)–(2) excluding expert testimony concerning factors affecting eyewitness identification violating Jordan's right to compulsory process in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution, article I, section 10 of the Texas Constitution, article 1.05 of the Texas Code of Criminal Procedure, and rule 702 of the Texas Rules of Criminal Evidence; (3) permitting the admission of hearsay testimony concerning the age of a photograph of Jordan; and (4) excluding a statement made by a detective concerning a photo lineup shown to a viewing witness, on the basis of hearsay.

We affirm.

On July 23, 1991, Roy Briggs was working the night shift at a 7–11 in Mansfield, Texas. At about 2:30 a.m., a man entered the store and looked around for ten or fifteen minutes. During this period, Briggs and the man were the only people in the store, and Briggs was focused on him. Another man, later identified as appellant Jordan, then entered the store and stood by the register. When Briggs moved to the front of the store, Jordan pulled out a gun and asked Briggs where the cigarettes were kept. Briggs took Jordan to the storeroom. Jordan ordered Briggs to fill a trash can with cigarettes and carry it out to a white pickup truck. Briggs loaded two more trash cans full of cigarettes into the pickup. Jordan then put on a pair of white gloves. Believing that he was about to be shot, Briggs shoved the trash can out the door, and locked the door behind him. He then locked himself in the storeroom and called "911." Officer Sanders arrived at the store a few minutes later. After getting a description of the robbers and their vehicles, Officer Sanders drove away in an attempt to find the robbers. A few miles from the store, Officer Sanders came upon two vehicles pulled over on the side of the highway and two men matching the description given by Briggs. Officer Sanders ordered the men to lie down on the ground, but they fled on foot. One of the men opened fire on the officer as she chased them, and the two men escaped as a consequence. One of the vehicles abandoned by the men was the white pickup loaded with the cigarettes from the 7–11. Jordan's Texas state identification card was also found in the pickup. Officer Sand-

ers was shown a photospread about one month after the robbery and identified both Jordan and the other defendant. Briggs worked with police to produce a composite drawing of the robber with the gun. On the day following the robbery, Briggs was shown a photo lineup that included an old picture of Jordan, but he was unable to identify anyone. One month later, Briggs was shown another photo lineup with a more recent photo of Jordan, and this time he identified Jordan as the man with the gun in store.

In his first two points of error, Jordan contends that the trial court erred in excluding expert testimony concerning factors affecting eyewitness identification violating Jordan's right to compulsory process in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution, article I, section 10 of the Texas Constitution, article 1.05 of the Texas Code of Criminal Procedure, and rule 702 of the Texas Rules of Criminal Evidence. The trial court conducted a hearing to determine the admissibility of the proffered expert testimony, and ruled the testimony inadmissible. The substance of the testimony by Dr. Raymond Finn was as follows:

1. He is a degreed psychologist with emphasis in forensic psychology. His special training and expertise in the area of eyewitness identification come from self education, reading the works of others in the field, working with crime victims concerning memory, and teaching courses in this area.

2. Dr. Finn was apprised of many of the facts of the case including information about the photospreads, by the defense prior to forming his opinions.

3. He is of the opinion that there is a significant chance that Officer Sander's identification of appellant is not as reliable as it would have been had a number of factors not been present, including having seen a photo identification card with appellant's photo on it prior to viewing the photospread.

4. There is a process call[ed] "proactive inhibition" which describes how misidentification has occurred due to seeing a photograph between an event and a later photospread. There have been studies that have demonstrated this effect.

5. He is of the opinion that Mr. Briggs' identification of appellant could have been undermined by proactive inhibition caused by the first photospread. He is of the further opinion that his identification could have been undermined by the fact that appellant was the only subject common to both photospreads, and the fact that appellant's photo was the only full body position.

6. Research refers to the effect of something called "weapon focus." Weapon focus and the emotional trauma associated with it can undermine a person's ability to recall or identify someone. Weapon focus can cause a narrowing of perception.

7. There is a state of mind that occurs when people are traumatized called "state dependent learning." When people perceive an event in a traumatized state, they are less likely to be able to recall when they are asked to do so in a calm state of mind.

8. Research shows that people are generally less able to identify or remember faces from ethnic groups different than their own. This could affect the identifications of appellant by Mr. Briggs and Officer Sanders.

9. There is a term called "memory hardening" which refers to the effect of being asked to recall an event a number of times. This frequent recall has a tendency to alter memories. Consequently, the degree of certainty with which witnesses believe in their identification is not related to accuracy. Someone can be certain, but yet inaccurate. They are not necessarily lying.

In ruling the testimony inadmissible, the court stated that this was not expert testimony, it would be supplanting the jury's own decision about credibility, and there was nothing covered by the testimony which could not be properly covered by cross-examination.

■ The threshold determination for admitting expert testimony is whether the "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." TEX.R.CRIM.EVID. 702. Under Rule 702, the proponent of novel scientific evidence must prove to the trial court, by clear and convincing evidence, that the proffered evidence is reliable and therefore relevant. If the trial court is so persuaded, then the evidence should be admitted for the jury's consideration unless the trial court determines that the probative value of the evidence is outweighed by a Rule 403 factor. *Kelly v. State,* 824 S.W.2d 568, 573 (Tex. Crim.App.1992); *Smith v. State,* 850 S.W.2d 275, 277–78 (Tex.App.—Fort Worth 1993, pet. ref'd).

> There is no more certain test for determining when experts may be used than the common sense inquiry whether an untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.... When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time.

*Pierce v. State,* 777 S.W.2d 399, 414 (Tex. Crim.App.1989) (citations omitted), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990) (quoting official commentary to Federal Rule 702, which is identical to the Texas Rule). The exclusion of testimony is within the sound discretion of the trial court. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App. [Panel Op.] 1979).

The court of criminal appeals has addressed the admissibility of expert testimony attacking eyewitness identification reliability in two recent cases, *Pierce,* 777 S.W.2d at 414–15, and *Rousseau v. State,* 855 S.W.2d 666, 685–86 (Tex.Crim.App.1993). In *Pierce,* the court held that the trial judge did not abuse his discretion by excluding testimony similar to that proffered here. Pointing to a long line of federal cases supporting its holding, the court reasoned that this type of expert testimony: (1) would not be helpful to the jury, because the jury is amply qualified to make determinations on the credibility of witnesses; (2) would cause needless delay in the trial; (3) would increase the likelihood that the jury would abandon its responsibility of weighing the credibility of the witnesses; (4) may not be rooted in a sound scientific basis; and (5) may be too general and not fit the facts of the case. The *Pierce* court emphasized this last point as supporting the exclusion of the expert testimony in that case, but held that it was not saying that this type of testimony should be excluded in all cases. *Pierce,* 777 S.W.2d at 416 n. 5. In *Rousseau,* the court also held the expert testimony concerning eyewitness reliability was properly excluded. The court pointed to the failure of the expert to personally examine the eyewitnesses in the case, and to state which of the general theories presented fit the facts of the case. *Rousseau,* 855 S.W.2d at 686.

The facts of this case are not as clear cut as those of *Rousseau* and *Pierce,* but we reach the same result for substantially the same reasons. Dr. Finn did point out that some of the factors adversely affecting eyewitness reliability were present in this case, and to that extent, his testimony "fit" more closely than in *Rousseau.* However, Dr. Finn's testimony did not consider all of the factors affecting the reliability of the eyewitnesses' identification of Jordan, such as the length of time the witnesses saw Jordan, the lighting conditions at the store or at the highway where Jordan was seen, or the physical descriptions given by the witnesses before the photo lineups were conducted. Dr. Finn did not interview the witnesses, or examine the photo lineup used by one of the witnesses in making the identification, though he admitted that this would be beneficial to forming his opinion. All of the general factors mentioned by the *Pierce* court are also present in this case. The failure of the expert to conduct a thorough, fact specific analysis of the eyewitness identifications adversely affected the value of the testimony to the jury, and the trial court could properly have found that cross-examination of the witnesses provided the jury with the same information without creating unnecessary confusion. Based on the specific facts of this case, we hold that the trial court did not abuse its discretion by excluding the expert testimony

of Dr. Finn. Points of error one and two are overruled.

■ In his third point of error, Jordan asserts that the trial court erred in permitting the admission of hearsay testimony concerning the age of a photograph of Jordan. Officer Turner testified that the photograph of Jordan used in the first photo lineup was approximately eight to ten years old. This testimony was elicited by the State to explain why Briggs did not pick out Jordan in the first photo lineup, but did pick him out in the second photo lineup, which used a current picture of Jordan. The court overruled Jordan's hearsay objection, and did not permit Officer Turner to be taken on voir dire to ascertain the source of the testimony. On cross-examination, Jordan was able to establish that Officer Turner had been told by someone else that the first photo was eight to ten years old. Hearsay is testimony about an out-of-court statement, offered to prove the truth of the matter asserted. TEX. R.CRIM.EVID. 801(d). The State argues that the statement was not offered to prove the truth of the matter asserted—the age of the photograph—but only to explain why Briggs failed to identify Jordan in the first photo lineup. We find this distinction meaningless. It is the age of the photo that is being used to explain the lack of an identification, and thus the truthfulness of the statement regarding the photo's age is essential to the testimony's purpose.

■ Having held this testimony hearsay, and thus properly objectionable, the question remains whether this error was harmful. Appellate review of error in criminal cases involves a determination of whether the error calls for reversal of the conviction, applying TEX.R.APP.P. 81(b)(2). *See Harris v. State,* 790 S.W.2d 568, 584 (Tex.Crim.App. 1989).

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2). Our harmless error analysis must focus upon the error, rather than the propriety of the outcome of the trial; trace its probable impact upon the jury; and determine whether it contributed to the conviction or punishment. *Harris,* 790 S.W.2d at 585–87. We consider the source and nature of the error, the extent to which it was emphasized by the State, its probable collateral implications, the weight a juror would probably place upon the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity. *Id.* at 587. This requires an evaluation of the entire record in a neutral, impartial and even-handed manner, not in the light most favorable to the prosecution. *Id.* at 586. If we are unable to determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment, we must reverse the conviction. *Id.* at 584.

The State did not have to elicit hearsay testimony to make its point. It could have properly asked the officer if it appeared that Jordan was younger in the photograph used in the first photo lineup. The State could have also published both of the photographs used in the photo lineups, and allowed the jury to reach this same obvious conclusion. We think it dispositive on the question of harm that the first picture of Jordan was obviously outdated, even without the hearsay testimony. Further, it is not the exact age of the photo ("eight to ten years old"), but only the general fact that the photo is old enough to invalidate the result of the first photo lineup, that is important to the State's purpose. We hold that any error in admitting the testimony of Officer Turner about the age of the photograph of Jordan used in the first photo lineup was harmless. Point of error three is overruled.

■ In his fourth and last point of error, Jordan contends he was wrongfully prevented from eliciting testimony from Officer Sanders about whether another officer, Officer Turner, told her she had identified the right suspect in a photographic lineup. The State objected to the question on the basis of relevancy and hearsay, and the court sustained the objection. Jordan argues that he sought to introduce the evidence not for

the truth of the matter asserted, but as substantive evidence of the facts surrounding the officer's positive identification. The exclusion of testimony is within the sound discretion of the trial court. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979). The mere fact that a correct ruling is given for the wrong reason will not result in a ground for reversal. If the decision is correct on any theory of law applicable to the case it will not be disturbed. *Calloway v. State,* 743 S.W.2d 645, 651–52 (Tex.Crim.App. 1988). Hearsay is testimony about an out-of-court statement, offered to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d). An out-of-court statement, offered to show what was said, rather than the truth of what was said, is not hearsay. *Livingston v. State,* 739 S.W.2d 311, 331 (Tex.Crim.App. 1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Clearly Jordan was not offering the evidence to show that he was correctly identified by Officer Sanders. The court's ruling, if based on hearsay, was not properly sustained. However, we believe that the proffered testimony was not relevant to the identification, since the statement by Officer Turner came after Officer Sanders correctly identified Jordan. Furthermore, the testimony would have had a tendency to mislead the jury and confuse the issues, and the objection was sustainable on Rule 403 grounds.

Even if the court's exclusion of this testimony was error, we hold the error to be harmless. Here, Officer Sanders testified in a pretrial hearing on Jordan's motion to suppress that she was sure about the identification of Jordan even before Officer Turner stated that she had picked the right suspect. Further, Jordan was also identified by the store clerk Briggs, and Jordan's identification card was found in the truck used to transport the stolen property. We hold that the error, if any, did not contribute to the conviction or punishment of Jordan. Point of error four is overruled.

The judgment of the trial court is affirmed.