**Alton Craig JORDAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 831–94.**

Court of Criminal Appeals of Texas.

June 12, 1996.

Wes Ball, Arlington, for appellant.

Danielle A. LeGault, Assistant District Attorney, Fort Worth, for appellee.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

A jury convicted appellant of the offense of aggravated robbery and assessed punishment of life imprisonment. The Court of Appeals affirmed. *Jordan v. State,* 877 S.W.2d 902 (Tex.App.—Ft. Worth 1994). We granted appellant's petition for discretionary review to address the admissibility of expert testimony on the issue of eyewitness identification under Texas Rule of Criminal Evidence 702.[1]

Roy Briggs was working at a Seven–Eleven in Mansfield, Texas at about 2:30 a.m. on January 23, 1991, when two men entered the store. One of the men, whom Briggs later identified as appellant, pulled out a gun and asked Briggs where the cigarettes were kept. Briggs took appellant to the storeroom where appellant ordered him to fill a trash can with cigarettes and carry it to a white pick-up truck outside. Briggs then loaded two more trash cans full of cigarettes into the pick-up. Shortly thereafter Briggs concluded that he was about to be shot so he shoved a trash can out the door and locked the door behind him. He then called 911. Officer Lee Sanders, responding to the call within minutes and getting a description of the offenders and their vehicles, began a search for the robbers. A few miles from

1. We also granted review to consider the admissibility of such testimony under the Sixth and Fourteenth Amendments to the United States Constitution, under Article I, § 10 of the Texas Constitution and under Tex.Code Crim. Proc. Ann. art. 1.05. Because appellant has offered virtually no argument or authority in support of his constitutional grounds or in support of his claim under article 1.05, we now conclude those points were improvidently granted and will address only Rule 702.

the store Sanders saw two vehicles pulled over on the side of the road and two men matching Briggs' description of the robbers. When Sanders ordered the men to lie down on the ground, they fled. As he pursued them, they opened fire and escaped. One of the abandoned vehicles was a white pickup truck loaded with trash cans full of cigarettes. Appellant's photo identification card was found in the truck.

On the day following the robbery, Briggs viewed a photo lineup which included a photograph of appellant, but was unable to identify anyone. A month later Briggs was shown another photo lineup containing a more recent photograph of appellant and at this time identified appellant as the man with the gun on the day of the robbery. Also about a month after the offense, Sanders was shown a photo lineup and identified both appellant and another man as the men who fled at the side of the road.

At trial, the defense contested the identification of appellant, calling two witnesses who placed appellant in Waco at the time of the offense. The defense also called co-defendant Darren Harris [2] who testified that he was present at the commission of the offense and that the offense was committed by another man, Derrick Hicks, not appellant.

Appellant attempted to call Dr. Raymond Finn as an expert witness, under Tex. R.Crim. Evid. 702, on the reliability of eyewitness testimony. Finn testified on voir dire outside the presence of the jury. The Court of Appeals summarized the content of Finn's testimony as follows:

1. He is a degreed psychologist with emphasis in forensic psychology. His special training and expertise in the area of eyewitness identification come from self education, reading the works of others in the field, working with crime victims concerning memory, and teaching courses in this area.

2. Dr. Finn was apprised of many of the facts of the case including information about the photospreads, by the defense prior to forming his opinions.

3. He is of the opinion that there is a significant chance that Officer Sander's identification of appellant is not as reliable as it would have been had a number of factors not been present, including having seen a photo identification card with appellant's photo on it prior to viewing the photospread.

4. There is a process call[ed] "proactive inhibition" which describes how misidentification has occurred due to seeing a photograph between an event and a later photospread. There have been studies that have demonstrated this effect.

5. He is of the opinion that Mr. Briggs' identification of appellant could have been undermined by proactive inhibition caused by the first photospread. He is of the further opinion that his identification could have been undermined by the fact that appellant was the only subject common to both photospreads, and the fact that appellant's photo was the only full body position.

6. Research refers to the effect of something called "weapon focus." Weapon focus and the emotional trauma associated with it can undermine a person's ability to recall or identify someone. Weapon focus can cause a narrowing of perception.

7. There is a state of mind that occurs when people are traumatized called "state dependent learning." When people perceive an event in a traumatized state, they are less likely to be able to recall when they are asked to do so in a calm state of mind.

8. Research shows that people are generally less able to identify or remember faces from ethnic groups different than their own. This could affect the identifications of appellant by Mr. Briggs and Officer Sanders.

9. There is a term called "memory hardening" which refers to the effect of being asked to recall an event a number of times. This frequent recall has a tendency to alter memories. Consequently, the degree of certainty with

2. Appellant's mother and Harris testified that Harris was appellant's brother.

which witnesses believe in their identification is not related to accuracy. Someone can be certain, but yet inaccurate. They are not necessarily lying.

*Jordan,* 877 S.W.2d at 904. The trial court ruled Finn's testimony inadmissible on the grounds that it was not beyond the common knowledge of the jurors, that it would be supplanting the jurors' role in weighing credibility, and that the same information could be brought out with effective cross-examination.

The Court of Appeals held the trial court did not abuse its discretion by excluding Finn's testimony. *Id.* at 905–06. The court cited *Pierce v. State,* 777 S.W.2d 399 (Tex. Crim.App.1989), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990), and *Rousseau v. State,* 855 S.W.2d 666 (Tex. Crim.App.1993), for the proposition that expert testimony concerning eyewitness reliability is not admissible if it is too general and does not fit the specific facts of the case. It reasoned that the same result was compelled in this case, noting that the following fact-specific information was not part of Finn's opinion:

> ... Dr. Finn's testimony did not consider all of the factors affecting the reliability of the eyewitnesses' identification of Jordan, such as the length of time the witnesses saw Jordan, the lighting conditions at the store or at the highway where Jordan was seen, or the physical descriptions given by the witnesses before the photo lineups were conducted. Dr. Finn did not interview the witnesses, or examine the photo lineup used by one of the witnesses in making the identification, though he admitted that this would be beneficial in forming his opinion.

*Jordan,* 877 S.W.2d at 905. The Court of Appeals concluded that the "failure of the

expert to conduct a thorough, fact specific analysis of the eyewitness identification adversely affected the value of the testimony to the jury ...." *Id.*

Appellant claims the Court of Appeals erred in equating this case with *Pierce* and *Rousseau.* He contends Finn's testimony was considerably more "fitted" to the facts than was the expert testimony in those cases. The State contends the Court of Appeals properly held the testimony inadmissible as it did not adequately fit the facts of the case, the subject was within the knowledge of the average juror, and the potential for confusing the issues and misleading the jury was greater than any benefit the jury could have received from the testimony.

### I.

Prior to the Rules of Criminal Evidence, the standard for admissibility of expert testimony as to scientific evidence[3] was whether the subject matter had "gained general acceptance in the particular field in which it belongs." *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923); *Zani v. State,* 758 S.W.2d 233 (Tex.Crim.App.1988). Texas Rule of Criminal Evidence 702 superseded that standard. *Kelly v. State,* 824 S.W.2d 568 (Tex. Crim.App.1992).

Rule of Criminal Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *Kelly,* we held that a trial court's task under Rule 702 is to determine whether the proffered scientific expert testimony "is sufficiently *reliable* and *relevant* to help the jury in reaching accurate results."[4] *Id.* at 572

---

3. Although Rule 702 also encompasses "technical, or other specialized knowledge," we limit our discussion in the instant case to *scientific* knowledge. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589–91, 113 S.Ct. 2786, 2795 n. 8, 125 L.Ed.2d 469 (1993)(noting that while Rule 702 applies to "technical, or other specialized knowledge" discussion limited to scientific expertise since that was nature of evidence at issue).

4. The dissent contends that the Court of Appeals relied upon Tex.R.Crim. Evid. 403 rather than Rule 702 in determining that the trial court did not abuse its discretion in excluding Finn's testimony. *Dissent* op. at 557. This conclusion is based upon a loose reading of a single sentence

(emphasis added). Focusing on the reliability factor, we noted that unreliable scientific evidence is not helpful to the jury because it frustrates rather than promotes intelligent evaluation of the facts. To be considered reliable, evidence based on scientific theory must satisfy three specific criteria pertaining to its validity and application.[5] We further identified a list of nonexclusive factors that could affect a trial court's determination of reliability.[6] Most of these factors address the soundness of the underlying scientific theory and technique.

The United States Supreme Court similarly held the *Frye* standard was superseded by Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 585–87, 113 S.Ct. 2786, 2793, 125 L.Ed.2d 469 (1993). In *Daubert,* the Supreme Court set forth a two-pronged reliability and relevance standard virtually identical to the one adopted by this Court in *Kelly. Compare id.* at 589–91, 113 S.Ct. at 2795 (trial judge must ensure that scientific evidence is relevant and reliable) *with Kelly,* 824 S.W.2d at 572 (trial court's task is to determine whether scientific expert testimony is reliable and relevant). As to the reliability factor, the Supreme Court stated that when the subject of the expert's testimony is "scientific knowledge," the basis of his testimony must be grounded in the methods and procedures of science. *Daubert,* 509 U.S. at 589, 113 S.Ct. at 2795. The Court explained:

> [I]n order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation—*i.e.,* "good grounds," based on what is known. In short, the requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability.

*Id.* While Rule 702 involves the dual inquiry of relevance and reliability, the Supreme Court emphasized that the "overarching subject" of Rule 702 is the scientific validity of the evidence at issue.[7] *Id.* 509 U.S. at 593–

---

in the Court of Appeals' opinion and wholly ignores the majority of the court's holding and analysis. The Court of Appeals does not cite or make any reference to Rule 403; rather it sets out the issue before it as whether exclusion of the testimony violated the Texas or United States Constitutions or Rule 702. *Jordan,* 877 S.W.2d at 904. The Court of Appeals relied on *Pierce* and *Rousseau*—two cases specifically addressing whether an expert's testimony on the reliability of eyewitness testimony "fit" the facts of the case under Rule 702—concluding that "[t]he facts of this case are not as clear cut as those of *Rousseau* and *Pierce,* but we reach the same result for substantially the same reasons." *Id.* at 905. Neither *Pierce* nor *Rousseau* discussed Rule 403. While we do not disagree that one statement contained in the Court of Appeals' opinion could be viewed as incorporating Rule 403 notions, *see Majority op.* at 556 n. 9, that is clearly not the basis for the Court of Appeals' holding or the ground upon which this Court specifically granted review. Furthermore, the State did not make a Rule 403 objection in the trial court nor did it argue on appeal that the trial court properly excluded the evidence under Rule 403. In its brief to the Court of Appeals, the State conceded that the trial court did not specifically address Rule 403.

5. The following three criteria must be established to show reliability:

> (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have

been properly applied on the occasion in question.
*Kelly,* 824 S.W.2d at 573.

6. We identified the following factors:
> (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question.
*Kelly,* 824 S.W.2d at 573.

7. The Court identified four "general observations" as appropriate considerations for the trial court in assessing evidence offered under Rule 702. *Daubert,* 509 U.S. at 591–95, 113 S.Ct. at 2796–97. While the Court did not specifically refer to this list of nonexclusive factors as related to the reliability inquiry, they all pertain to the scientific basis of the evidence: (1) whether the scientific theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error in a particular scientific technique; and (4) general acceptance of the scientific theory or technique. *Id.*

95, 113 S.Ct. at 2797. In sorting the untested or invalid theories from those that are grounded in "good" science, trial judges are called upon to serve as "gatekeepers." *Id.* 509 U.S. at 595–99, 113 S.Ct. at 2798–99. With respect to the relevance consideration, the Court pointed to Rule 702's requirement that the expert's testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* 509 U.S. at 589–93, 113 S.Ct. at 2795–96. Expert testimony that does not relate to a fact in issue is not helpful. This consideration is what the Supreme Court referred to as the "fit" requirement. That is, the proffered testimony must be " 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.' " *Id.* 509 U.S. at 591–93, 113 S.Ct. at 2796 (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985)).

In line with this Court and the United States Supreme Court, the Texas Supreme Court recently held that under Texas Rule of Civil Evidence 702, the proponent of expert testimony must show that it is relevant to the issues in the case and is based on a reliable scientific foundation. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549 (1995). The Court emphasized the role of trial courts in scrutinizing "proffered evidence for its scientific reliability when it is based upon novel scientific theories, sometimes referred to as 'junk science.' " *Id.* at 554.

■ The focus of the courts in *Kelly, Daubert,* and *Robinson,* was on assessing the scientific reliability of the evidence at issue, rather than its relevance. As discussed at length in those cases, reliability depends upon whether the evidence has its basis in sound scientific methodology. This demands a certain technical showing. Accordingly, it is upon the reliability inquiry that trial courts can weed out testimony pertaining to so-called "junk science." *Id.* It is largely to this end that trial judges are called upon to serve as "gatekeepers." *Daubert,* supra. While "junk science" or otherwise inadequately tested scientific theories might be shown to relate to the facts of a case and to

that extent be of assistance to the jury, it will not have a sufficiently sound scientific basis to be reliable.

■ Relevance is by nature a looser notion than reliability. Whether evidence "will assist the trier of fact" and is sufficiently tied to the facts of the case is a simpler, more straight-forward matter to establish than whether the evidence is sufficiently grounded in science to be reliable. This is not to say that the relevancy inquiry will always be satisfied. *See Pierce,* 777 S.W.2d at 414–16 (expert could not say which scientific principles he discussed were applicable to facts in case and he had no knowledge of witnesses' testimony); *Rousseau,* 855 S.W.2d at 668 (expert only referred to "studies" and did not discuss whether any factors he planned to testify to would apply to facts of case); *Williams v. State,* 895 S.W.2d 363, 366 (Tex.Crim.App.1994)(expert failed to connect "generic testimony" to specific facts of case). The expert must make an effort to tie pertinent facts of the case to the scientific principles which are the subject of his testimony. Establishing this connection is not so much a matter of proof, however, as a matter of application.

## II.

■ The primary disputed issue in this case was the eyewitness identification of appellant as one of the robbers. Appellant offered Finn's expert testimony as to factors affecting the reliability of eyewitness identification. Finn answered questions about the specific facts of the case and how they might be affected by the factors he testified to. He stated his opinion about the reliability of the eyewitness identifications at issue, and identified facts in the case that he believed impacted those identifications.

The Court of Appeals' holding that the proffered evidence was inadmissible was based upon its conclusion that the evidence did not sufficiently "fit" the facts of the case. *Jordan,* 877 S.W.2d at 905. In reaching its decision, the court noted Finn did not testify about several factors that might have affected the reliability of the eyewitness identifica-

tions present in this case, such as the length of time appellant was viewed by the witnesses, the lighting conditions, or the physical descriptions of appellant initially given by the witnesses prior to viewing the photo line-up. In addition, Finn did not interview the witnesses or examine certain pieces of evidence, although he admitted doing so would have aided his opinion as to the reliability of the identification.

Although Finn did not testify as to *every conceivable factor* that might affect the reliability of eyewitness identification present in this case, interview the witnesses, or examine certain pieces of evidence, his testimony was sufficiently tied to the facts to meet the simple requirement that it be "helpful" to the jury on the issue of eye witness reliability. The Court of Appeals erred to hold otherwise. Adopting a notion of fit that is so strict as to require an expert to address every foreseeable issue pertinent to his testimony that might be raised by the relevant facts goes beyond the requirement that the testimony be helpful and therefore relevant under Rule 702. The question under Rule 702 is not whether there are *some* facts in the case that the expert failed to take into account, but whether the expert's testimony took into account *enough* of the pertinent facts to be of assistance to the trier of fact on a fact in issue. That some facts were not taken into account by the expert is a matter of weight and credibility, not admissibility. In view of the facts that Finn *did* consider, the omissions in his testimony did not so undermine the value of his testimony as to render it unhelpful to the jury.[8]

8. We also observe that the Court of Appeals' opinion that Finn's expert testimony was lacking because he did not interview the witnesses or examine certain evidence is at odds with Rule of Criminal Evidence 703, which specifically permits an expert to base his opinion testimony on facts or data made known to him during trial. Tex.R.Crim. Evid. 703; *see also Fielder v. State*, 756 S.W.2d 309, 320–21 (Tex.Crim.App.1988) (expert's testimony can be based on hypotheticals).

9. The Court of Appeals also noted that "[a]ll of the general factors mentioned by the *Pierce* court are also present in this case." *Jordan*, 877

The State argues that Finn's testimony is not helpful because the subject matter is within the common knowledge of the jurors. While jurors might have their own notions about the reliability of eyewitness identification, that does not mean they would not be aided by the studies and findings of trained psychologists on the issue. If the scientific basis of Finn's testimony is sound (an issue not now before us and one we do not now decide), it could have aided the jury by either validating or calling into question their own inclinations. If a juror's "gut" or common sense beliefs about certain factors were to be called into question by Finn's testimony on the issue, the juror would be prompted to reconsider preconceived notions that he might otherwise have been unaware of when reviewing the facts of the case. On the other hand, if a juror's preconceived notions were confirmed by Finn's testimony on the issue, the juror could proceed with greater confidence on that issue.

The Court of Appeals held the evidence properly excluded under Rule 702 because it determined it was not "relevant" thereunder, in that it was not sufficiently tailored to the facts.[9] The court did not, therefore, reach the question of whether the testimony was scientifically reliable under Rule 702. We reverse the judgment of the Court of Appeals and remand this cause to that court to reconsider the admissibility of the evidence in a manner consistent with this opinion.

KELLER, J., dissents joined by McCORMICK, P.J.

WHITE, J., dissents.

S.W.2d at 905. The Court of Appeals did not elaborate on that conclusion. We observe that the factors mentioned in *Pierce* predate our opinion in *Kelly* and consequently might no longer be appropriate considerations under Rule 702. The Court of Appeals further stated that "the trial court could properly have found that cross-examination of the witnesses provided the jury with the same information without creating unnecessary confusion." *Id.* While this consideration was one of the factors mentioned in *Pierce* as proper for consideration under Rule 702, we now view this factor as more a function of Rule 403, whether the probative value of the evidence is substantially outweighed by the danger of, among other things, confusion of the issues.

KELLER, Judge, dissenting.

If I understand the majority correctly, a trial judge faced with a decision as to whether to admit expert testimony should determine three matters: (1) whether the evidence is reliable, (2) whether it is relevant, and (3) whether its probative value is substantially outweighed by its prejudicial value.

Reliability is to be determined by reference to factors enumerated in *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App.1992), as set out in the majority opinion in footnotes 5 and 6. The question of reliability is the "Is it science?" question.

Relevance is established by determining whether the expert testimony relates to a fact in issue. The question of relevance is the "Does it fit?" question.

Probative value versus prejudicial value is determined *via* the traditional R. 403 analysis, as footnote 4 of the majority opinion explains.

I agree that a trial court should exclude proffered expert testimony if it does not meet any one of the three tests outlined by the majority.[1] I disagree with the majority in its application of the principles announced today to the facts of this case.

The Court of Appeals determined that the trial court was within its discretion in excluding the evidence because:

> The failure of the expert to conduct a thorough, fact specific analysis of the eyewitness identifications adversely affected the value of the testimony to the jury, and the trial court could properly have found that cross-examination of the witnesses provided the jury with the same informa-

tion without creating unnecessary confusion.

*Jordan v. State*, 877 S.W.2d 902, 904 (Tex. App.—Ft. Worth 1994). According to the majority, this holding of the Court of Appeals "... was based upon its conclusion that the evidence did not sufficiently 'fit' the facts of the case." Op. at 555.

This is where I disagree. I interpret the above language as a determination that the trial court could have excluded the testimony under a R. 403 balancing test. The words "adversely affected the value" and "without creating unnecessary confusion" suggest this conclusion to me most forcefully.

If the Court of Appeals held that the evidence was properly excludable because it was irrelevant (did not "fit"), then the majority is probably correct. But I do not believe that that court ever adopted or meant to adopt the strict notion of "fit" attributed to them by the majority. Op. at 556.

If, on the other hand, the Court of Appeals meant merely that the lack of a perfect "fit" adversely affected probative value in a R. 403 analysis, then the Court of Appeals was right. I think that is exactly what the Court of Appeals said. And I agree with the Court of Appeals that, under a R. 403 analysis, the trial court did not abuse its discretion in excluding the testimony.[2] I would therefore affirm the judgment of the Court of Appeals.

I respectfully dissent to remanding the cause to the Court of Appeals.

McCORMICK, P.J., joins.

---

1. In addition to the three matters cited by the majority, expert testimony must also satisfy a helpfulness requirement under R. 702. Expert testimony does not "assist" the trier of fact if the jury is just as capable as the expert in drawing conclusions about the subject matter in question. *See Yount v. State*, 872 S.W.2d 706, 710 (Tex.Crim.App.1993)(expert testimony concerning truthfulness).

2. I note that a trial judge may determine that evidence is admissible strictly on the basis of R. 702, and that, unless a R. 403 objection is made at trial by the party opposing admission, he may

not complain on appeal on that basis about the *admission* of the evidence. On the other hand, regardless of whether a R. 403 objection was made at trial, an appellate court may find that the trial court did not abuse its discretion in *excluding* evidence by finding that the evidence could have been excluded on R. 403 grounds. *Smith v. State*, 898 S.W.2d 838, 843 (Tex.Crim. App.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995)(a trial court's decision to exclude evidence may be sustained on any theory of law applicable to the case, including R. 403).