**Jon David WEATHERRED, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–95–225 CR**

Court of Appeals of Texas, Beaumont.

Submitted Dec. 7, 1998.

Decided Jan. 20, 1999.

Discretionary Review Refused May 12, 1999.

Discretionary Review Granted May 12, 1999.

Daniel W. Hurley, Lubbock, for appellant.

Michael A. McDougal, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION ON REMAND

WALKER, Chief Justice.

On original submission, this court reversed and remanded appellant's conviction for Capital Murder based upon trial court error in denying appellant's request to introduce scientific evidence regarding eyewitness reliability. *See Weatherred v. State,* 963 S.W.2d 115 (Tex.App.—Beaumont 1998). Both the State and the State Prosecuting Attorney filed petitions for review with the Court of Criminal Appeals. The Court granted both petitions, vacated our decision, and remanded the case to us for reconsideration of our holding. *See Weatherred v. State,* 975 S.W.2d 323 (Tex.Crim.App.1998). We were

directed by the Court to reconsider our holding concerning appellant's expert testimony evidence in light of the Court's recently decided case of *Nenno v. State,* 970 S.W.2d 549 (Tex.Crim.App.1998). The Court also directed us to address the State's appellate contention that the trial court's ruling was correct based upon TEX.R. EVID. 403.[1] We will therefore confine this opinion to only those two issues. We will not revisit any of the other findings or holdings contained in our opinion on original submission.

In our opinion on original submission, we noted that the leading Texas cases on the issue of the admissibility of expert testimony were *Kelly v. State,* 824 S.W.2d 568 (Tex. Crim.App.1992), and *Jordan v. State,* 928 S.W.2d 550 (Tex.Crim.App.1996). *Weatherred,* 963 S.W.2d at 120. We also noted that both cases discuss, and rely heavily upon, the United States Supreme Court case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Id.* Relying heavily ourselves on *Kelly* and *Jordan,* we engaged in a rather rigorous examination of the evidence proffered by appellant's expert, Dr. Kenneth Deffenbacher, in order to determine whether said evidence was sufficiently reliable and relevant. *Id.* at 122–131.

We first found Dr. Deffenbacher's testimony to be "relevant" based upon the Court's holding in *Jordan. Id.* at 121. Regarding the "reliability" prong, we noted that *Kelly* specifically set out three criteria to be met and mentioned seven "non-exclusive factors" that could affect a trial court's determination of reliability. *Id.* at 121–22. We concluded that Dr. Deffenbacher's testimony and the written scientific material dealing with eyewitness reliability provided:

adequate validation of the scientific theories in question. The experiments discussed in the articles involved valid and generally acceptable scientific techniques. This provided a reliable basis for Dr. Deffenbacher's opinion that photo bias, more often than not, results in inaccurate "eyewitness" identification, and for his opinion

that the confidence level of "eyewitness" identification of strangers is wholly unrelated to the accuracy of such identification when the stranger is viewed for a very short period of time.

*Id.* at 130–31.

On remand, we are instructed to reconsider our examination of the scientific evidence issue in light of the *Nenno* case. We must admit that we are puzzled by the Court's directive to engage in this analysis as the holding in *Nenno,* unless we are entirely misreading it, appears to *lessen* the scrutiny in examining scientific evidence for the *Kelly* factors of relevance and reliability. We take this cue from the following language in *Nenno:*

When addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method, *Kelly*'s requirement of reliability applies but with *less rigor* than to the hard sciences. To speak of the validity of a "theory" or "technique" in these fields may be roughly accurate but somewhat misleading. The appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. These questions are merely an appropriately tailored translation of the *Kelly* test to areas outside of hard science. And, hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, may often be inappropriate for testing the reliability of fields of expertise outside the hard sciences.

*Nenno,* 970 S.W.2d at 561 (emphasis added). In its brief on remand, the State does not mask its frustration with *Nenno*'s existence. Typical is this comment taken from the brief which immediately follows the quote from *Nenno* setting out the three-part test: "As shown below, even this modified three-factor

---

1. Former Rule of Criminal Evidence 403, which was in effect at the time of trial, is identical to   Rule of Evidence 403.

test is difficult to apply and fails to address the crux of the Rule 702 issue: Will this testimony assist the jury?" On the contrary, we see *Nenno* as imposing a much easier inquiry in order to reach the ultimate issue of reliability.

◼ In the instant case, it cannot be seriously contested that the scientific evidence involved is "soft science" as that term is used in *Nenno*. Astonishingly, the State takes issue with this observation in their initial sub-point when they aver: "Dr. Deffenbacher's testimony was presented as hard science based on controlled studies and *Jordan*, not *Nenno* may apply to this case. If indeed *Jordan* does apply, then the State has essentially "pleaded themselves out of court" because, as noted above, we applied *Jordan* and *Kelly* in our opinion on original submission in finding reversible trial court error. We feel, as did apparently the Court of Criminal Appeals, that *Nenno* addresses the type of scientific discipline, for Rule 702 purposes, involved in the instant case.

◼ In applying the three *Nenno* questions, we feel no need to again reproduce the extensive testimony from Dr. Deffenbacher or the variety of scientific articles which discussed experiments done in the study of eyewitness reliability. The first question, whether the field of expertise is a legitimate one, is virtually answered by the facts of the *Nenno* case itself. In *Nenno*, the expert in question was a "Supervisory Special Agent in the Behavioral Science unit of the FBI." *Nenno*, 970 S.W.2d at 552. The Court ultimately found the reliability of the expert's testimony was sufficiently established under TEX.R. EVID. 702.[2] *Id.* at 562. As was noted in our opinion on original submission, Dr. Deffenbacher was chairman of the psychology department of the University of Nebraska at Omaha and had held that position since 1980. *Weatherred*, 963 S.W.2d at 122. We have no problem finding that the area of behavioral science, and psychology in particular, is a legitimate field of expertise. The second question can also be answered in the

affirmative. Dr. Deffenbacher's testimony and journal articles were definitely within his scope of the field of psychology. Lastly, Dr. Deffenbacher's descriptions of the experiments he personally conducted, as well as the details of various experiments described in the scientific journals tendered by appellant, relied upon and utilized widely accepted principles of psychology and the behavioral sciences in general. *See Weatherred*, 963 S.W.2d at 122–30. As did the Court in *Nenno*, we too find that the evidence in question tendered through Dr. Deffenbacher was reliable, and clearly relevant, so as to be admissible under Rule 702. It was therefore error for the trial court to have denied appellant's request to call Dr. Deffenbacher as a witness for the defense. Our harm analysis remains unchanged from that set out in our opinion on original submission. *See Id.* at 131–33.

We now turn to the Rule 403 issue. In its opinion remanding the case back to us, the Court of Criminal Appeals framed the issue as follows:

> Specifically, the parties contend the Court of Appeals failed to address its claim that the trial court's exclusion of the expert witness' testimony could be upheld because the probative value of the testimony was substantially outweighed by its prejudicial effect. Tex.R.Crim.Evid. 403. If the trial court's decision to exclude evidence is correct on any theory of law applicable to the case, including Rule 403, it will be sustained. *Smith v. State*, 898 S.W.2d 838, 843 (Tex.Cr.App.1995).

*Weatherred*, 975 S.W.2d at 323. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." We will attempt to address any Rule 403 implications as fully as possible.

◼ At the outset, we must strongly take issue with the following observation con-

---

**2.** Former Rule of Criminal Evidence 702, which was in effect at the time of trial, is identical to Rule of Evidence 702. Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to

understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

tained in the State's supplemental appellate brief:

> The primary disputed issue in this case was *not* the eyewitness identification of Appellant as the perpetrator. [N.R.] never positively identified Appellant. [24 SF 1701] Ms. [B.M.]'s identification placed Appellant in the neighborhood, but not at the scene of the crime. [24 SF 1676]

With all due respect to the State, the sole contested issue in the case was the identity of the perpetrator of the murder. An examination of the record shows that it was a hotly contested issue. For example, the defense provided its own eyewitness testimony placing appellant miles from the Lubbock airport at the same time when prosecution witnesses testified they observed appellant not only at the airport, but on a plane heading for Dallas. While N.R.'s testimony was quite equivocal as to her identification of appellant near the scene of the crime, as we pointed out in our prior opinion B.M. could not be shaken in her absolute certainty of appellant being the person she observed in her driveway on the morning of the murder. *Weatherred,* 963 S.W.2d at 121. We therefore cannot accept the State's suggestion that identity, as elicited from eyewitnesses or otherwise, was not the "primary disputed issue" in the instant case.

Any applicability of Rule 403 to the scientific evidence in question, for appellate review purposes, must take place in the general context of the need for such evidence by its proponent, i.e., its probativeness. *See Montgomery v. State,* 810 S.W.2d 372, 392 (Tex.Crim.App.1990)(opinion on rehearing). Appellate courts must measure a trial court's ruling against the "relevant criteria" by which a Rule 403 decision is to be made. *Id.* The Court in *Montgomery* set out our analysis of Rule 403 issues as follows:

> Therefore, we hold that where relevant criteria, viewed as objectively as possible, lead to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. Relevant criteria gleaned from the authorities include, *inter alia,* that the ultimate issue was not seriously contested by the opponent; that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant; that the probative value of the misconduct evidence was not, either alone or in combination with other evidence, particularly compelling; that the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered purpose would not likely have been efficacious. Accordingly, when the record reveals one or more such relevant criteria reasonably conducing to a risk that the probative value of the tendered evidence is substantially outweighed by unfair prejudice, then an appellate court should conclude that the trial court acted irrationally in failing to exclude it, and thus abused its discretion.

*Id.* at 392–93.

We now turn to an analysis of the "relevant criteria" in the instant case based upon the guidelines set out in *Montgomery.* As we examine the record before us, particularly in the context of the excluded scientific evidence in question, the following "relevant criteria" appear:

1) the ultimate issue, identity, was very seriously contested by both parties;

2) appellant had other evidence that it produced for the jury indicating that appellant was not the perpetrator, but this testimony was apparently not "convincing" and did not seriously call into question the identity testimony from the State's two main eyewitnesses, N.R. and B.M.;

3) the probative value of the excluded scientific evidence was indeed particularly compelling as it included the rather novel, but experimentally validated, theory that the confidence level of eyewitness identification of strangers is wholly unrelated to the accuracy of such identification when the stranger is viewed for a very short time, *See Weatherred,* 963 S.W.2d at 131;

4) the excluded scientific evidence was not of such a startling or spectacular nature that a limiting instruction to the jury, if legally applicable, could have no practical effect.

It is clear from the relevant criteria involved in the instant case that the probative value of the excluded scientific evidence greatly exceeded any prejudicial effect to the State's case against appellant. This is also true with regard to the other Rule 403 grounds such as "confusion of the issues," "misleading the jury," "undue delay," or "needless presentation of cumulative evidence." As the Court in *Nenno* observed in reply to a Rule 403 objection to the State's behavioral science expert: "As for appellant's Rule 403 claim, the above discussion shows that Lanning's testimony did not merely duplicate the jury's knowledge because Lanning possessed superior knowledge concerning the behavior of offenders who sexually victimized children." *Nenno,* 970 S.W.2d at 562. In our case, Dr. Deffenbacher's testimony indicated his "superior knowledge" concerning the lack of reliability of eyewitnesses exposed to "photo bias," and concerning the lack of a relation between eyewitness confidence and eyewitness accuracy with regard to stranger identification. As his work in these two particular areas of behavioral science mirrored the facts that were presented surrounding N.R.'s and B.M.'s ultimate identification of appellant, Dr. Deffenbacher's evidence was particularly relevant and probative. We find the trial court abused its discretion in denying appellant's request to present Dr. Deffenbacher and his scientific evidence. We again sustain appellant's third point of error. The judgment of the trial court is reversed and the cause remanded to said court for a new trial on the merits.

REVERSED AND REMANDED.

STOVER, Justice, dissenting.

Having dissented to the majority opinion on original submission of this case, I now reconsider my position in light of the Texas Court of Criminal Appeal's opinion in *Nenno v. State,* 970 S.W.2d 549, 561 (Tex.Crim.App. 1998). In that opinion, the Court recognized the applicability of Tex.R. Evid. 702 to the "soft sciences" and set out a less stringent test for admission of such evidence. The

Court reaffirmed the requirement of reliability which it previously set out in *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App.1992), but stated the requirement would be applied with "less rigor." *Nenno,* 970 S.W.2d at 561. In light of *Nenno* and the less rigorous test set out therein, I now concur with the majority opinion and conclude the expert testimony was both relevant and reliable. I likewise am in agreement with the majority's conclusion that the testimony is more probative than prejudicial. The majority was correct in concluding the trial court erred in excluding Dr. Deffenbacher's testimony.

Rule 44.2(b) of the Texas Rules of Appellate Procedure governs the assessment of harm after error is found in criminal cases. It provides that "any [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The Court of Criminal Appeals has indicated that "[a] substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The initial question before us then is whether the error in excluding the expert testimony affected appellant's substantial rights. In other words, would Dr. Deffenbacher's testimony have had a substantial and injurious effect or influence in determining the jury's verdict. *See Salinas v. State,* 963 S.W.2d 889, 891 (Tex.App.—Corpus Christi), *vacated on other grounds,* 980 S.W.2d 219 (Tex.Crim.App. 1998).

The majority has done an in-depth analysis of this record, which I respect. However, after viewing the entire record and placing the error in the context of that record, I conclude, unlike the majority, that appellant's substantial rights were not affected. The unreliability of the eyewitness testimony was emphasized before the jury through appellant's cross examination of the eyewitnesses themselves and through introduction of other defense evidence.[1] Since the reliability issue

1. Appellant introduced into evidence photographs taken at the vantage point from which the young girl, N.R., would have viewed appellant at

the scene of the crime. Through the photographs, appellant's counsel sought to illustrate the point that the distance and the angle from

was already before the jury, albeit not by expert testimony, I do not believe appellant's substantial rights were affected by the trial court's error. Dr. Deffenbacher's testimony would have had no effect, or very slight effect, on the verdict. Consequently, the trial court's error was harmless and, pursuant to TEX.R.APP. P. 44.2(b), should be disregarded. Point of error three should be overruled.

which N.R. saw the alleged perpetrator made

N.R.'s identification of appellant unreliable.