IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,925 






EX PARTE CATHY LYNN HENDERSON, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM CAUSE NO. 94-2034 IN THE 299TH DISTRICT COURT


TRAVIS COUNTY





 Hervey, J., filed a dissenting opinion in which Keller, P.J., and
Keasler, J., joined.


DISSENTING OPINION



 Something is missing here. While the Court states that it accepts the trial court's
recommendation granting relief, it does so without providing any legal basis for that
ruling, and I cannot find a ground upon which relief should be granted. And to justify its
decision, the Court makes a quantum leap from "advances in science" to granting relief,
which presents a whole new dilemma for the criminal justice system and this case in
particular. 

 The real issue in this case is whether the admission of potentially unreliable
evidence requires this Court to grant relief regardless of the state of the remaining record. 
Eleven expert witnesses testified at Applicant's writ hearing, some for both sides. The
trial court found all of the experts credible but focused on a change in the testimony of
expert Dr. Bayardo to conclude that Applicant had proven by clear and convincing
evidence that no reasonable juror would have convicted her in light of the "new
evidence." This Court now defers to that conclusion. However, nowhere in Dr.
Bayardo's altered testimony does he state or indicate that his original opinion was false,
nor does he refute the medical science relied upon by the other State experts. Instead, Dr.
Bayardo changed his opinion on the manner of death from "homicide" to "undetermined"
based upon changes in the science upon which he relied. While a change in Dr.
Bayardo's testimony could render his opinion unreliable, "unreliable" testimony does not
equate with "false testimony" or "innocence," nor does it automatically require a new
trial.

 The admission of expert testimony is governed by Texas Rule of Evidence 702,
and to be admissible under this rule, the party offering the scientific expert testimony
must demonstrate by clear and convincing evidence that such testimony is both relevant
and reliable. Kelly v. State, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). The focus of
the reliability analysis is to determine whether the evidence has its basis in sound
scientific methodology such that testimony about "junk science" is weeded out. Jordan v.
State, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996). 

 Whether the science at issue is a "hard" science (1) or a "soft" science, (2) "reliability
should be evaluated by reference to the standards applicable to the particular professional
field in question." Coble v. State, 330 S.W.3d 253, 274 (Tex. Crim. App. 2010); see
Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) (holding that when
the subject of the expert's testimony is scientific knowledge, the basis of his or her
testimony must be grounded in the accepted methods and procedures of science). 
Therefore, a change in the science upon which an expert relied in providing his trial
testimony might indeed undermine the reliability of his testimony. But it does not
necessarily follow that the testimony was "false" or that the existence of new science
necessarily implicates innocence. For example, in this Court's unanimous opinion in Ex
parte Miles, 359 S.W.3d 647 (Tex. Crim. App. 2012), we adopted the trial court's
conclusion that the "gunshot-residue standards, as testified to at trial, are no longer
reliable." Id. at 663. However, we did not adopt the trial court's conclusion that
"Applicant should also be granted relief, independently, on the ground of flawed forensic
testimony." Id. Instead, we looked to all of the evidence presented and only then
determined that actual-innocence relief was warranted. Other decisions from this Court
recognize both the advancement in science and the legislative directive to apply that
science to our caselaw through Chapter 64 of the Texas Code of Criminal Procedure. 
While further testing may prove to be inconclusive or even exculpatory, relief may
nonetheless be denied based on the volume of other evidence. See Gutierrez v. State, 337
S.W.3d 883 (Tex. Crim. App. 2011); Prible v. State, 245 S.W.3d 466 (Tex. Crim. App.
2008).

 Furthermore, even if a change in the underlying science means that the expert
testimony was unreliable, it does not automatically result in a due process violation (and
thus a new trial). An additional analytical step is required. Only when the admission of
unreliable testimony was harmful is due process implicated and a new trial appropriate. 
See Coble, 330 S.W.3d at 280. Accordingly, relief should only be granted if the applicant
demonstrates the error affected his or her substantial right to a fair trial. See Tex. R. App.
Proc. 44.2(b); Coble, 330 S.W.3d at 280 (explaining that harm occurs when the error had
a substantial and injurious effect or influence in determining the jury's verdict). A
criminal conviction should not be overturned by the erroneous admission of evidence "if
the appellate court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect." Johnson v. State, 967 S.W.2d 410,
417 (Tex. Crim. App. 1998).

 This reliability analysis is consistent with our policy interest in the finality of
convictions. The Supreme Court has emphasized its enduring respect for "the State's
interest in the finality of convictions that have survived direct review within the state
court system." Calderon v. Thompson, 523 U.S. 538, 555 (1998). "Without finality, the
criminal law is deprived of much of its deterrent effect." Teague v. Lane, 489 U.S. 288,
309 (1989) (plurality op.). To abide by Judge Cochran's suggestion that any intervening
scientific development should result in a new trial would seriously undermine the stability
of our criminal justice system. Most convictions involve some type of scientific
evidence, whether hard (e.g., DNA or urinalysis) or soft (e.g., eyewitness identification or
forensic psychiatrists testifying about future dangerousness). Rarely is a case wholly
dependent on science alone. Thus, if we were to grant a new trial with every scientific
advancement, without proof that the original science was indeed faulty, the finality of 
convictions would be illusory. While the evolution of science is important to the
improvement of our system, each case must be decided individually, taking into account
all of the evidence.

 In summary, intervening scientific developments might result in unreliable expert
testimony, and the admission of this unreliable evidence might rise to the level of a due
process violation. But this case does not present us with such a scenario. Dr. Bayardo
changed his opinion on the manner of death from "homicide" to "undetermined" based
upon changes in the science upon which he relied. Perhaps this makes Dr. Bayardo's trial
testimony unreliable, but as Judge Cochran acknowledges in her concurring opinion, this
"does not mean applicant is actually innocent of homicide" or that "[Dr. Bayardo's] trial
testimony was 'false' at the time it was given, based upon the state of scientific
knowledge that he relied upon at that time." The "new evidence," even if based on "new
science," must still affirmatively establish that the applicant is entitled to relief. See Ex
parte Spencer, 337 S.W.3d 869, 879 (Tex. Crim. App. 2011).

 Additionally, when the entire record is considered, it is clear that Appellant's
substantial rights to a fair trial were not affected by the admission of Dr. Bayardo's
testimony. See Coble, 330 S.W.3d at 280 ("In making a harm analysis, we examine the
entire trial record and calculate, as much as possible, the probably impact of the error
upon the rest of the evidence."). As Judge Keasler competently outlines in his dissenting
opinion, there is ample evidence to support that Appellant intentionally caused Brandon's
death. See Tex. Penal Code § 19.03(a)(8). Certainly, in this context, Dr. Bayardo's
unreliable testimony could not have a substantial and injurious effect or influence in
determining the jury's verdict. See Coble, 330 S.W.3d at 280. The record provides fair
assurance that the error would not influence a jury, or would have but a slight effect. See
Johnson, 967 S.W.2d at 417.

 For these reasons, I respectfully dissent.

 Hervey, J.

Filed: December 5, 2012

Publish
1. Daubert, 509 U.S. 579; Kelly, 824 S.W.2d 568.
2. Nenno v. State, 970 S.W.2d 549 (Tex. Crim. App. 1998).