

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1892-11

**BRANDON SCOTT BLASDELL, Appellant**

**v.**

**THE STATE OF TEXAS**

---

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE NINTH COURT OF APPEALS
## MONTGOMERY COUNTY

**HERVEY, J., filed a concurring opinion in which KEASLER and COCHRAN, JJ., joined.**

## CONCURRING OPINION

I agree with the majority that the trial court abused its discretion in this case when

it excluded Dr. Rubenzer's expert testimony on weapon focus effect on the grounds that it

was not relevant. I write separately to emphasize that *Tillman*[1] made it clear that for the

testimony of an eyewitness-identification expert to be relevant for purposes of Texas Rule

---

[1] *Tillman v. State*, 354 S.W.3d 425 (Tex. Crim. App. 2011).

of Evidence 702, the expert need not be able to attest that a specific eyewitness-identification procedure actually resulted in an unreliable identification and that "it is enough that a particular identification procedure, or the facts or circumstances attending a particular eyewitness event, has been empirically demonstrated to be fraught with the *potential* to cause a mistaken identification." *See* Maj. Op. at 10.

As we explained in *Tillman*, the relevance inquiry of Rule 702 is whether evidence "'will assist the trier of fact' and is sufficiently tied to the facts of the case." *Tillman*, 354 S.W.3d at 438 (quoting *Jordan v. State*, 928 S.W.2d 550 (Tex. Crim. App. 1996)). An expert need "not testify as to every conceivable factor that might affect the reliability of eyewitness identification present." *Id.* Indeed, contrary to the notion that an expert must testify that a particular procedure actually resulted in an unreliable identification, his testimony need only be "sufficiently tied to the facts to meet the simple requirement that it be 'helpful' to the jury on the issue of eye witness reliability." *Id.*

In *Tillman*, the eyewitness-identification expert, Roy Malpass, discussed the general psychology of eyewitness identification, including an explanation of his studies and those conducted by others on the subject. "Then, Malpass responded to a series of hypotheticals proposed by the defense, applying his knowledge of eyewitness identification to the facts presented. . . . Malpass stated his opinion about the reliability of the eyewitness identifications in each situation, and he identified the factors that he believed impacted those identifications." *Id.* at 438-39.

In holding that the relevance prong of Rule 702 was satisfied, we noted that Malpass did not testify as to the specific identification procedures in the case, nor did he testify that those procedures actually resulted in an unreliable identification. Significantly, we emphasized that "each hypothetical to which Malpass applied his theories and opinions *paralleled* the facts . . . and the scenarios in which the eyewitnesses found themselves." *Id.* at 439 (emphasis added). And we highlighted that Malpass's expert testimony "was intended to educate the jury about an area in which it lacked a thorough understanding so that it might comprehend some of the complications that may arise." *Id.* at 442.

Nowhere in our opinion did we even suggest that Malpass (or any similar expert) had to attest that the specific identification procedures employed *actually* resulted in an unreliable identification. Rather, we consistently stated that the testimony must be tied to the facts of the case only as much as that the testimony will be "helpful" to the jury in understanding the issue of eyewitness reliability. Therefore, it is clear from *Tillman* that the relevance prong of Rule 702 is satisfied if an eyewitness-identification expert provides the jury with additional information that "may help guide the jury in its understanding of the standards in the area" and the potential for a particular eyewitness procedure to cause a mistaken identification. *See Tillman*, 354 S.W.3d at 442.

With these comments, I respectfully join.

Hervey, J.

Filed: December 5, 2012

Publish