Alton Craig JORDAN, Appellant.

v.

The STATE of Texas, State.

No. 02–93–247–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 7, 1997.

Wes Ball, Arlington, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall, Charles Mallin, Assistant Chiefs of the Appellate Section, Danielle A. LeGault Christian Harrison, Sharon Johnson, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAY, LIVINGSTON and RICHARDS, JJ.

## OPINION ON REMAND

LIVINGSTON, Justice.

The sole issue before us is whether appellant presented sufficient evidence to establish the scientific reliability of excluded testimony

---

on eyewitness identification. Because we find that appellant failed to present clear and convincing evidence of scientific reliability, we affirm.

## Procedural History

This case is on remand from the Court of Criminal Appeals. On original submission, we held that the trial court did not err in excluding expert testimony offered by appellant because the testimony did not sufficiently "fit" the facts of the case. *Jordan v. State*, 877 S.W.2d 902, 905 (Tex.App.—Fort Worth 1994), *rev'd*, 928 S.W.2d 550 (1996). The Court of Criminal Appeals held that the testimony was "sufficiently tied to the facts to meet the simple requirement that it be 'helpful' to the jury on the issue of eye witness reliability." *Jordan*, 928 S.W.2d at 556. Accordingly, the court remanded the case to this court for us to determine "whether the testimony was scientifically reliable under Rule 702." *Id.*

Appellant now complains that the trial court erred in excluding the proffered expert testimony because the evidence presented during the expert's voir dire demonstrated the reliability of the testimony. The State contends that the trial court was within its discretion in excluding the testimony because appellant failed to prove that the underlying theories and techniques were scientifically reliable.

## Facts

On July 23, 1991, Roy Briggs was working the night shift at a 7–11 in Mansfield, Texas. Around 2:30 a.m., two men entered the store. One of the men, later identified as appellant, pulled a gun and asked Briggs where the cigarettes were kept. Briggs took appellant to the storeroom where cigarettes were stored. Appellant ordered Briggs to fill three trash cans with cigarettes and load them into a white pick-up truck parked outside the rear store door. After Briggs completed this task, he noticed that appellant had put on a pair of white gloves. Fearing he was about to be shot, Briggs grabbed an empty trash can and pushed appellant outside the rear store door and locked it.

Briggs locked himself in the storeroom and called 911.

Officer Lee Sanders arrived at the store within minutes. After getting a description from Briggs, Sanders drove off in search of the robbers. A few miles from the store, Sanders noticed a white pick-up truck and another vehicle parked on the side of the highway. Sanders also noticed two men matching the description given by Briggs standing by the vehicles. When Sanders ordered the two men to lie on the ground, they fled on foot. As Sanders pursued them, one of the two men opened fire. Officer Sanders took cover and both men escaped.

The white pick-up truck abandoned by the two men was loaded with cigarettes from the 7–11. Appellant's identification card was also found in the truck.

On the day after the robbery, Briggs was unable to identify anyone in a photo lineup. A month later, however, Briggs picked appellant out of a photo lineup containing a more recent photo of appellant. Sanders was also shown a photo lineup and identified appellant and another man as the men who had fled from the side of the highway.

At trial, appellant contested the eyewitness identifications. He presented testimony from two alibi witnesses placing him in Waco at the time of the offense. Appellant also called co-defendant Darren Harris, who testified that he was present at the robbery and that it was committed by Derrick Hicks, not appellant.

Appellant also attempted to present expert testimony from Dr. Raymond Finn on the reliability of eyewitness testimony. During voir dire and outside the presence of the jury, Finn testified about factors affecting the reliability of eyewitness identifications.

## Applicable Law

Appellant contends that expert testimony on eyewitness identification should be subjected to less scrutiny because the psychological sciences are not susceptible to the measurable results often associated with "hard science" and encourages us to apply a different standard of review in the instant case. The Court of Criminal Appeals, however, has

directed us to determine whether the testimony was "scientifically reliable under rule 702." *Jordan*, 928 S.W.2d at 556. The test adopted in "*Kelly* applies to all scientific evidence offered under Rule 702." *Hartman v. State*, 946 S.W.2d 60, 63 (Tex.Crim.App. 1997). Accordingly, we will determine whether appellant met his burden of establishing the scientific reliability of the testimony under the *Kelly* standard. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992).

Once it is determined the proffered evidence is relevant, the proponent of scientific evidence has the burden of proving its scientific reliability by clear and convincing evidence. *See Kelly*, 824 S.W.2d at 573. To satisfy this burden, the proponent must make a technical showing, outside the presence of the jury, demonstrating: (1) a valid underlying scientific theory, (2) a valid technique applying the theory, and (3) that the technique was properly applied on the occasion in question. *See id.; Jordan*, 928 S.W.2d at 555. Factors that may influence a trial court's determination of reliability include: (a) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if ascertainable; (b) the qualifications of the expert testifying; (c) the existence of literature supporting or rejecting the underlying theory and technique; (d) the potential rate of error of the technique; (e) the availability of other experts to test and evaluate the technique; (f) the clarity with which the underlying theory and technique can be explained to the court; and (g) the experience and skill of the person who applied the technique on the occasion in question. *See Kelly*, 824 S.W.2d at 573.

We will not disturb the trial court's decision to exclude expert scientific testimony absent an abuse of discretion. *See id.* at 574. That is, if the trial court's decision to exclude the evidence falls within the "zone of reasonable disagreement," we will affirm. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op on reh'g).

### Application of Law to Facts

Dr. Finn testified during voir dire about the possibilities that the identifications of appellant were unreliable. Dr. Finn identified the following theories as contributing to his opinion: proactive inhibition, weapon focus, state dependent learning, confabulation, memory hardening, and the unreliability of some cross-racial identifications. When asked whether he could testify with any reasonable degree of scientific certainty whether factors related with the above theories influence an identification, Dr. Finn responded: "All I can say, as a scientist, or somebody who talks to scientists, these are processes that operate in normal human processes to a greater or lesser degree. How much they operate in this case, I can't say."

We have recently held that Dr. Finn's opinion based on the same theories and offered under a similar predicate failed to meet the admissibility requirements of expert scientific testimony offered under Rule 702. *See Forte v. State*, 935 S.W.2d 172, 177 (Tex. App.—Fort Worth 1996, pet. ref'd). This court held that the trial court did not abuse its discretion in excluding the proffered testimony because Forte failed to present clear and convincing evidence that the theories underlying Dr. Finn's opinions were valid or that the techniques used to apply those theories were valid. *Id.*

As in *Forte*, appellant has failed to present sufficient evidence of the validity of the scientific theories underlying his opinion or the validity of the techniques used to apply the theories. While Dr. Finn constantly referred to support for the validity of the theories in vague generalities such as "research of others," "some research," "a number of studies," and even "one specific test"; he failed to mention by name any other person who purports to be an expert in the field or produce or name the studies he relied on to reach his opinions. Dr. Finn also admitted that he has never been subjected to peer review or conducted scientific research to test the validity of these theories himself. Finally, there is no evidence of the rate of error in applying Dr. Finn's method of reaching his conclusions under the theories he discussed. Based on the record before us, we cannot say that the trial court abused its discretion in excluding this testimony.

Appellant's sole point of error is overruled, and the judgment of the trial court is affirmed.