

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| GARY GENE ROBERTS, JR, | § | No. 08-19-00029-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 2 |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| Appellee. | § | (TC#1489866D) |

## O P I N I O N

A jury found Appellant Gary Gene Roberts, Jr. guilty of two counts of aggravated sexual assault of a child under 14 years of age, and sentenced him to 15 years in prison on both counts, with the sentences to run concurrently.[1]  Appellant contends that the trial court erred in finding that a State expert witness was qualified, and that her testimony was reliable and relevant. Appellant also contends that the trial court abused its discretion in denying his motion for continuance, which he requested in order to conduct additional investigation due to the State's inadvertent delay in producing a document prior to trial.   Finding no error, we affirm.

---

[1] The jury acquitted Appellant of a third count of aggravated sexual assault of a child.

1

# I. BACKGROUND[2]

## A. Factual History

The victim in this case, S.R., is Appellant's daughter. Appellant and S.R.'s mother, M.R.A., divorced in 2003, but Appellant would often watch S.R. while M.R.A. was at work. In late 2006, S.R. was seven years old. At that time, M.R.A. returned home from work and S.R. informed her that Appellant had taken a shower with her, and upon exiting the shower, Appellant "was acting silly" and had hit her in the face with his "thing," meaning his penis. When M.R.A. confronted him, Appellant told her that it was an accident. Although concerned about the incident, M.R.A. did not contact law enforcement, in part because she was "scared" of Appellant, but she did curtail Appellant's opportunities to be alone with S.R.

In October of 2007, M.R.A. spoke with S.R. once again about the earlier incident, and this time she shared new details. S.R. informed her mother that after showering, Appellant had forced his penis in her mouth and had pushed her up against a wall and performed oral sex on her. At trial, S.R. elaborated that during the incident, Appellant's mouth and tongue had touched her vagina. S.R. also testified that at Appellant's direction, she then put her mouth on his penis and began licking it. S.R. recalled that afterwards, Appellant warned her not to tell anybody.

In October of 2007, M.R.A. also found drawings of a male penis in S.R.'s room, and finally reported the matter to Child Protective Services ("CPS"). However, around this time, M.R.A. was hospitalized with depression, and with CPS's consent, S.R. went to live with a family friend during M.R.A.'s hospitalization. The family friend noted that S.R. seemed very scared and withdrawn when she first came to live with his family, and was uncomfortable being alone with

---

[2]This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

male individuals. In addition, the family friend found pictures that S.R. had drawn of stick figures, including one depicting an individual on top of another. The family friend also observed S.R. using two stuffed animals to demonstrate to his daughter what Appellant had done to her, by placing one stuffed animal on top of the other.

A CPS investigator, Jennifer Porter, conducted a forensic interview with S.R. on October 30, 2007. In the interview, S.R. informed her that she had been sexually abused. After investigating the matter for several months, and speaking with various witnesses, including M.R.A. and the family friend, Porter determined that S.R.'s outcry was credible and that there was reason to believe she had been sexually abused. Her findings were documented in a 37-page report that was admitted at trial.

On November 8, 2007, Crystal Utley, an employee of Cook's Children's Hospital in Fort Worth, physically examined S.R. and gathered a narrative from her in accordance with the hospital's medical protocol for sexual abuse victims. In the narrative, S.R. reported that Appellant had performed oral sex on her, had required her to perform oral sex on him, and had also used his hand to penetrate her vagina.

In July and August of 2008, Stephanie Nick, who at the time was employed as a forensic interviewer at Alliance for Children, also conducted two forensic interviews of S.R. Although S.R. did not make an outcry during the first interview, she did during the second interview, and informed Nick that Appellant had sexually assaulted her. As part of the interview process, Nick had S.R. draw a picture of Appellant's "private" parts which confirmed Nick's belief that S.R. had been sexually assaulted.

At trial, S.R. and her mother both testified that in the years following the sexual assault, S.R. began having various behavioral issues, such as cutting herself at age 11, and that she

exhibited low self-esteem for which she received counseling.

### B. Procedural History

At the same time that CPS was conducting its investigation, Dennis Hutchins, a Fort Worth Police Department Detective, also investigated the case. Hutchins informed CPS investigator Porter in December 2007 that he believed S.R. had made a "good outcry." In January 2008, he stated he intended to obtain a warrant for Appellant's arrest. However, unknown to Porter, Hutchins had in fact closed S.R.'s case in November of 2007, finding that S.R. had made inconsistent statements and that there was insufficient evidence to substantiate her claim of sexual abuse. When Hutchins later left the Department, it was discovered that he had mishandled several cases, so the Department formed a task force in 2016 to review over a thousand of his former cases. During the review process, S.R.'s case was identified as one of the cases that Hutchins had mishandled, and the case was assigned to Detective Joseph Collins. Detective Collins reinvestigated the case in February of 2017, and took new statements from both S.R. and M.R.A. After concluding that S.R. and M.R.A.'s statements were consistent, and that there was sufficient evidence to substantiate S.R.'s allegations of sexual assault, Detective Collins obtained a warrant for Appellant's arrest.

In June of 2017, Appellant was charged with three counts of aggravated sexual assault of a child under the age of 14 years, two of which involved allegations that Appellant had forced S.R. to engage in oral sex, and one of which involved an allegation of digital penetration.[3]

The State presented the case that we outline above. Appellant testified at trial and denied all of the allegations. He suggested that S.R. may have been confused about who assaulted her,

---

[3] Appellant was also charged with two counts of indecency with a child by contact, but the State dropped those two charges prior to trial.

4

and that the perpetrator may have been S.R.'s paternal step-grandfather, noting that he and the grandfather had a "similar build." Appellant also speculated that M.R.A.'s current husband may have been "behind" the accusations because he wanted to get Appellant "out of the picture," or, alternatively, that S.R. may have made up the allegations because she was angry with him for not paying more attention to her.

The jury nonetheless found Appellant guilty of two counts of aggravated sexual assault with regard to the allegations of oral sex but acquitted him of the third count of aggravated sexual assault with regard to the allegation of digital penetration. He was sentenced to two 15-year prison sentences, to be served concurrently. Appellant did not file a motion for new trial. This appeal, which raises two issues, follows.

## II. ISSUE ONE: EXPERT WITNESS TESTIMONY

Appellant first contends that the trial court erred in qualifying Stephanie Nick to testify as an expert witness. He specifically challenges her qualifications to testify as an expert in the field of child sexual abuse, and contends that her testimony was neither reliable, nor relevant.

### A. Background

At trial, Nick primarily testified as a fact witness, explaining the results of the two forensic interviews that she conducted with S.R. in 2008. However, the State also sought to qualify Nick as an expert witness for the limited purpose of providing her opinion on the common behavioral traits exhibited by victims of child sexual abuse in the years following the abuse. Following a lengthy voir dire examination, the trial court overruled Appellant's objections and qualified Nick to testify as an expert on that subject. Nick was then permitted to testify that, based on her professional experience and training, it is common for victims of child sexual abuse to: (1) cut themselves as they get older; (2) draw pictures of what has happened to them; (3) be triggered by

5

certain things, such as sights, sounds or smells; and (4) act out the abuse they suffered "using dolls or toys or something like that[.]"

## B. Standard of Review and Relevant Law

A trial court's ruling on the admissibility of expert testimony is reviewed on appeal for an abuse of discretion. *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex.Crim.App. 2019). We do not disturb that ruling if it lies within the zone of reasonable disagreement. *Russeau v. State*, 291 S.W.3d 426, 438 (Tex.Crim.App. 2009). A trial court abuses its discretion when its ruling falls outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (en banc) (op. on reh'g). Stated otherwise, a trial court abuses its discretion when it acts unreasonably or arbitrarily without reference to any guiding rules or principles. *State v. Hill*, 499 S.W.3d 853, 865 (Tex.Crim.App. 2016).

For expert testimony, those guiding rules and principles are found in the Texas Rules of Evidence, including Rule 702, which provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX.R.EVID. 702. Case law has further clarified that for "expert testimony to be admissible under these rules, the proponent of the expert scientific evidence must demonstrate by clear and convincing evidence that the testimony is 'sufficiently reliable and relevant to help the jury in reaching accurate results.'" *Wolfe v. State*, 509 S.W.3d 325, 335-36 (Tex.Crim.App. 2017), *quoting Kelly v. State*, 824 S.W.2d 568, 572 (Tex.Crim.App. 1992). The proponent must prove (1) the expert is qualified, (2) the testimony is based on a reliable scientific foundation, and (3) it is relevant to the issues in the case. *Wolfe*, 509 S.W.3d at 336; *Vela v. State*, 209 S.W.3d 128, 131 (Tex.Crim.App. 2006). "These conditions are

commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Vela*, 209 S.W.3d at 131.

The trial court serves the role as a gatekeeper and must decide any preliminary challenge to a witness's qualifications and evidence's admissibility. TEX.R.EVID. 104(a); *Vela*, 209 S.W.3d at 131. In discharging this gatekeeper role, the trial court is vested with the often-difficult task of determining that which is irrelevant or is likely to confuse the jury in its decision-making process. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex.Crim.App. 2010). Nonetheless, the trial court's gatekeeping role "does not supplant cross-examination as 'the traditional and appropriate means of attacking shaky but admissible evidence.'" *Wolfe*, 509 S.W.3d at 336, *quoting Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 728 (Tex. 1998).

### C. Analysis

#### 1. *Qualification*

A party offering expert testimony has the burden to show the witness is qualified on the matter in question. TEX.R.EVID. 702; *Penry v. State*, 903 S.W.2d 715, 762 (Tex.Crim.App. 1995). The type of specialized knowledge that qualifies a witness to offer an expert opinion in a particular field may be derived from a variety of sources, including the witness's "specialized education, practical experience, a study of technical works or a combination of these things." *Rhomer*, 569 S.W.3d at 669. In addition to having a sufficient background in a particular field, the trial court must determine that the witness's background is "tailored to the specific area of expertise in which the expert desires to testify." *Id., quoting Vela*, 209 S.W.3d at 133.

Nick's educational, professional, and personal background was closely tailored to the testimony she provided with regard to the common traits suffered by victims of child sexual abuse. Nick had a degree in social work, and was a licensed social worker. Her other experience

7

included: (1) investigating hundreds of cases as a CPS investigator from 2002 to 2007; (2) attending the the CPS Training Academy from May 2002 through August 2002; (3) attending other training sessions regarding child development, investigative training, and conferences on crimes against children; and (4) working as a forensic interviewer at Alliance for Children from 2007 to 2010, where she received additional training and attended conferences in the field of forensic interviewing techniques. In addition, Nick ran a licensed foster home for children who were victims of child abuse from 2012 to 2018, which required her to receive 30 hours of annual training on the dynamics of child abuse and neglect.

Despite this history of training and experience Appellant contends that Nick was not qualified to testify as an expert witness in the field of child sexual abuse because she was unable to provide the qualifications of those who formally trained her in that field. Appellant has not cited to any authority, however, that would require an expert witness to provide information on their trainer's qualifications, nor do we believe that it was incumbent upon her to do so. As the Court of Criminal Appeals has recognized, an expert witness is not required in every instance to demonstrate formal training, and the expert may instead gain expertise in a particular field solely through their own personal experience or research. *See Morris v. State*, 361 S.W.3d 649, 656 (Tex.Crim.App. 2011); *see also Nenno v. State*, 970 S.W.2d 549, 562 (Tex.Crim.App. 1998) (noting that an FBI agent had attained "superior knowledge concerning the behavior" of child sex offenders, based on his own observations and research, which included conducting personal interviews with inmates convicted of child sex offenses and examining the inmate's psychological records), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex.Crim.App. 1999) (en banc).

As set forth above, Nick testified as to both her formal training in the field of child sexual

abuse, as well as to the years she spent working directly with victims of such abuse; we find that this provided sufficient information for the trial court to qualify her to testify as an expert witness in this field. *See, e.g., Duckett v. State*, 797 S.W.2d 906, 920 (Tex.Crim.App. 1990) (en banc) (considering a social worker, who had worked many cases involving child sexual abuse, to be an expert in the field of child sexual abuse, and who could testify to help the jury understand why the victim changed her testimony and appeared confused), *disapproved on other grounds by Cohn v. State*, 849 S.W.2d 817, 819 (Tex.Crim.App. 1993) (en banc).

Appellant also contends that even if Nick was at one time qualified to testify as an expert in this field, her qualifications had in effect lapsed, as she had not worked in the field of child abuse since 2010, and any expertise that she may have had was "out of date." Although it is true that Nick stopped working professionally in the field of child abuse in 2010, she continued to run a licensed foster home until 2018 and was therefore still working with children who had suffered abuse. She also continued to receive annual training in the dynamics of child abuse and neglect. Moreover, there is nothing in the record to suggest that Nick could not recall the training that she had previously received in this field or her prior experience working in that field. Nor do we have any reason to believe that the subject matter of her testimony, i.e., the "common traits" exhibited by victims of child sexual abuse, have changed over the years. We therefore conclude that the trial court did not abuse its discretion in finding that Nick was qualified to testify as an expert in the field of child sexual abuse.

Finally, in determining whether a trial court abused its discretion in ruling on an expert's qualifications, an appellate court may consider (1) the complexity of the field, (2) how conclusive is the expert's opinion, and (3) how central is the area of expertise to the resolution of the lawsuit. *Rhomer*, 569 S.W.3d *at 669-670, citing Rodgers v. State*, 205 S.W.3d 525, 528 (Tex.Crim.App.

9

2006); *see also Vela*, 209 S.W.3d at 131. In general, greater qualifications are required for more complex fields of expertise and for more conclusive and dispositive opinions. *Rhomer*, 569 S.W.3d at 669. However, in areas in which the "expert evidence is close to the jury's common understanding, the witness's qualifications are less important than when the evidence is well outside the jury's own experience." *Rodgers*, 205 S.W.3d at 528. In the present case, Nick's testimony regarding the common behavioral traits exhibited by victims of child sexual abuse, while undoubtedly important to corroborate S.R.'s allegation of sexual abuse, was not of a highly technical or complex nature. Therefore, the trial court was entitled to view Nick's qualifications as being of less importance in determining the admissibility of her testimony.

### 2. *Reliability*

Nick's testimony falls within what would be called the "soft sciences." *Cf. Morris*, 361 S.W.3d at 654, *citing Nenno,* 970 S.W.2d at 561. The court of criminal appeals has held that in cases involving the softer sciences, three reliability questions should be considered: "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Id*. at 654-655, *citing Nenno*, 970 S.W. 2d at 561; *see also Rhomer*, 569 S.W.3d at 671 (reaffirming the so-called "*Nenno* test" for determining the reliability of expert testimony outside the field of "hard science"). We find all three prongs satisfied.

First, as Appellant acknowledges, research pertaining to the behavioral characteristics of sexually abused children has been recognized as a legitimate field of study. *See Cohn*, 849 S.W.2d at 818–19 (recognizing that an expert witness may testify regarding the general characteristics that have been empirically shown to be common among children who have been

10

sexually abused). Second, as set forth above, Nick's testimony was within that field, as she testified to the common behavioral traits exhibited by such victims.

Appellant, however, challenges the existence of the third prong, contending that Nick did not rely on or utilize the principles in that field, and that she failed to prove the validity of the methods used to reach her opinion. We disagree. Nick established that she based her opinion on the principles that she had learned in her training and experience in the field of child sexual abuse, as a CPS investigator, a forensic interviewer, and a foster parent. *See Nenno*, 970 S.W.2d at 562 (expert's opinion was reliable where it was based on his personal experience and research, despite his failure to cite to any "particular methodology" used to support his conclusions). Nick's "method" is essentially observational--that is what she saw over the course of the many cases she was involved with, and those related to her by others who trained on these topics. We therefore conclude that the trial court did not abuse its discretion in finding Nick's testimony to be reliable.

### 3. Relevance

Rule 702 incorporates a relevance inquiry through its requirement that the evidence "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993) (discussing Federal Rule of Evidence 702). Expert testimony that does not relate to a fact in issue is not helpful to the jury, and consequently, is not relevant. *Id.* at 591; *Jordan v. State*, 928 S.W.2d 550, 555 (Tex.Crim.App. 1996). Expert testimony is relevant when it is sufficiently tied to the facts of the case so that it will aid the jury in resolving a factual dispute. *Daubert*, 509 U.S. at 591; *Jordan*, 928 S.W.2d at 555. This condition is also referred to as the "fit" requirement. *See Daubert*, 509 U.S. at 591; *Vela*, 209 S.W.3d at 133, *citing Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996); *Jordan*, 928 S.W.2d at 555. In determining whether there is a proper "fit," the court may consider the expert's

qualifications to determine whether the expert's background is sufficiently "tailored to the specific area of expertise in which the expert desires to testify." *Vela*, 209 S.W.3d at 133.

Appellant's only argument on the topic of relevancy is that Nick's background was not sufficiently tailored to allow her to testify as an expert on the subject matter in question. However, as set forth above, we have already rejected that argument, finding that Nick had adequate experience and training that entitled her to testify as an expert on the type of behavioral traits that are commonly exhibited by victims of child sexual abuse. Moreover, we have no doubt that Nick's testimony was relevant to the facts of Appellant's case. Several witnesses testified that in the years following the alleged sexual abuse, S.R. drew pictures depicting the abuse, she used stuffed animals to demonstrate the abuse to others, and she began cutting herself as she approached adolescence. In turn, Nick testified that these were three common behavioral traits exhibited by victims of child sexual abuse, thereby corroborating S.R.'s allegation that she had been sexually abused as a child. We find that this sufficiently linked Nick's expert testimony to the facts of the case, making it relevant and helpful to assist the jury in determining the credibility of S.R.'s outcry. *See, e.g.*, *Williams v. State*, 895 S.W.2d 363, 366 (Tex.Crim.App. 1994) (expert witness testimony was relevant where witnesses testified that the child victims in that case displayed some of the characteristics that the expert testified were commonly displayed by child victims of sexual abuse).

Appellant's Issue One is overruled.[4]

---

[4] We further note that Dr. Coffman, who was qualified to testify as an expert witness, also testified without objection that victims of child sexual abuse commonly engage in "self-harm," including cutting themselves, as an "unhealthy coping mechanism" as they enter adolescence. Inasmuch as we conclude the admission of Nick's testimony was not error, we need not address harm. But had we done so, the un-objected to admission of other similar evidence would be problematic for Appellant's harm argument. *See Mosley v. State*, 983 S.W.2d 249, 258 (Tex.Crim.App. 1998) (en banc) (op. on reh'g) (explaining that harm from the erroneous exclusion of evidence may be mitigated by the admission of similar evidence).

### III.  ISSUE TWO:  THE MOTION FOR CONTINUANCE

In Issue Two, Appellant contends that the trial court erred by denying his motion for a continuance of his trial.  The motion claimed that he needed additional time to investigate the possibility that he was the victim of mistaken identity after he learned that the State had failed to timely produce a CPS report that he believed suggested that possibility.

#### A.  Basis of the Motion

Prior to trial, the parties entered into a pretrial agreement that required the State to produce all relevant CPS documents for Appellant's review.  The State initially shared various CPS documents relating to the offense, as well as other unrelated documents pertaining to an incident involving S.R. in 2012, through its "TechShare" portal.  However, the State did not share until the day before trial a 37-page report summarizing CPS's 2007-2008 investigation.  Upon learning of the report, Appellant immediately filed a motion for a continuance in order to conduct additional investigation, contending that the report contained statements indicating that S.R.'s maternal step-grandfather, R.G., was the possible perpetrator of the assault on S.R.

The trial court heard and denied the motion for continuance just prior to jury selection.  At the hearing, the parties agreed that the State's error in failing to produce the report was not intentional.  The State also pointed out that, upon learning of its error, it immediately made the report available to Appellant, and offered to give R.G.'s phone number to opposing counsel.  The State further argued that there was no basis for Appellant to conduct an independent investigation into R.G.'s role in the matter because neither M.R.A. nor S.R. had ever identified R.G. as the perpetrator, and because CPS's investigation had eliminated him as the perpetrator.  The trial court agreed with the State, and therefore denied the motion for continuance, and allowed the CPS report to be introduced into evidence at trial.

**B. Standard of Review and Relevant Law**

A trial court may grant a defendant's written and sworn motion for a continuance "upon sufficient cause shown[.]" TEX. CODE CRIM.PROC.ANN. art. 29.03. We review a trial court's decision denying a motion for a continuance for an abuse of discretion. *See Gallo v. State*, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007); *Priester v. State*, 478 S.W.3d 826, 831 (Tex.App.-- El Paso 2015, no pet.). To support an abuse of discretion, the record must show "with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *See Gonzales v. State*, 304 S.W.3d 838, 842 (Tex.Crim.App. 2010), *quoting* 42 *George E. Dix & Robert O. Dawson,* Texas Practice: Criminal Practice and Procedure § 28.56 (2d ed. 2001), at 532-33. Generally, a showing of harm arising from the denial of a motion for continuance must be made at a hearing on a motion for new trial because only then will the defendant be able to produce evidence as to the "additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted." *See Gonzales*, 304 S.W.3d at 843. Speculation alone as to possible harm will not suffice to obtain a reversal for a trial court's failure to grant a continuance. *See Renteria v. State*, 206 S.W.3d 689, 702 (Tex.Crim.App. 2006); *see also Gonzales*, 304 S.W.3d at 842-43.

**C. Analysis**

Appellant contends that the trial court erred in denying his motion for continuance, arguing that the motion in and of itself demonstrated that he was harmed by the denial of the continuance, because he was denied the ability to investigate R.G as the possible perpetrator of the offense. In particular, Appellant asserts that there were several statements made in Porter's report suggesting that R.G. was a potential suspect in the sexual assault, which provided a "legitimate basis" for him to "further investigate to determine whether it was [R.G.] and not the defendant, who committed

14

the act." Although it is unclear whether M.R.A. ever accused R.G. of being the perpetrator of the assault, we agree that there were several statements in the Porter report indicating that M.R.A. had expressed some concerns about R.G. in the CPS investigation. In particular, the report indicates that in October of 2007, after M.R.A. had her mental breakdown, she informed a CPS investigator that that she did not want S.R. placed with her mother and R.G. while she was in the hospital because of her concerns about R.G. Specifically, M.R.A. reported that R.G. had been "abusive" to her and her mother in the past, that she did not like how R.G. looked at S.R., and that she suspected R.G. may have "done something" to S.R. M.R.A. also expressed concern that R.G. had a photograph of S.R. on his computer, and that R.G. kept the computer locked away from others. As well, the family friend with whom S.R. was ultimately placed, advised Porter that S.R. had told him that she did not want to see or talk with her grandmother, and started crying when she thought she would be required to visit her home.[5]

However, the report also reflects that after investigating the possibility that R.G. committed the offense, Porter ultimately made a final determination ruling out that possibility. In particular, the report indicates that Porter interviewed S.R., who expressly denied that R.G. had done anything inappropriate to her, and that Porter also spoke with M.R.A. after her release from the hospital, who informed her that she had previously been "confused when she made statements about [R.G.]." In addition, the report indicates that Porter also spoke with R.G. and his wife, both of whom denied that he had done anything inappropriate to S.R.

Although Appellant contends that he needed additional time to conduct a "further investigation" to contact additional "witnesses with personal knowledge" regarding R.G.'s

---

[5] The family friend also told Porter that he suspected that R.G. may have had pornography on his computer, but he lacked any firsthand knowledge of that claim.

possible role in the offense, Appellant does not indicate who those witnesses might be, or what additional information they could have provided beyond what was set forth in Porter's report. Instead, Appellant contends that that it would have been helpful to his case if R.G. had testified at trial and had been willing to admit that he engaged in the suspicious behavior outlined in Porter's report. Yet, Appellant presented no evidence that he ever contacted R.G. to determine whether he would in fact be willing to make such an admission. In fact, Appellant has failed to point to any additional investigation he did, or could have done, that would have uncovered any incriminating information beyond what was contained in Porter's report, that was already introduced into evidence. Accordingly, we conclude that Appellant did not meet his burden of establishing that he was harmed by the trial court's denial of his motion for continuance.

Appellant's Issue Two is overruled. The trial court's judgment is affirmed.

JEFF ALLEY, Chief Justice

December 23, 2019

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)