

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00104-CR

Ishmael Jabari **DEBROW**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 22-1142-CR-B
Honorable Gary L. Steel, Judge Presiding

Opinion by: Rebeca C. Martinez, Chief Justice

Sitting: Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: March 27, 2024

AFFIRMED

A jury convicted appellant Ishmael Debrow for murdering Rand Vanwert, and it assessed punishment at seventy-seven years imprisonment. TEX. PEN. CODE ANN. § 19.02(b). The trial court signed a final judgment in accordance with the jury's verdict. In two issues, Debrow complains that the trial court abused its discretion by: (1) omitting particular language from the jury charge; and (2) sustaining the State's relevancy and reliability objections to the expert testimony of Kevin Beaver, Ph.D., a sociologist. We affirm.

# I. CHARGE ERROR

At trial, Debrow maintained that Vanwert — whom Debrow alleged used steroids — was the initial aggressor and that he had no choice but to defend himself against Vanwert's assault. Specifically, Debrow testified that Vanwert assaulted him with a knife, and he initially responded by kicking Debrow in the chest. As the altercation escalated, Debrow "started swinging [a] knife" and he "didn't stop until Rand fell." Satish Chundru, M.D., a forensic pathologist, testified that Vanwert died from "[m]ultiple stab wounds."

At the charge conference, Debrow objected:

> Other offenses [sic] would be, I think, just to the absence of the application paragraph on the presumption . . .

> . . .

> So I'll just start now. Defense's first objection is the absence of the application paragraph in the presumption. The application paragraph contains a provision that limits the findings of the presumption deliberation to just the presumption.

> Now, this is a common issue that comes up with attorneys where they assume that if there is criminal activity going on, that that vitiates the right of self-defense for a defendant. That merely removes the presumption; and, therefore, the application paragraph is critical in order for the jury's deliberation. The absence of the application paragraph may be interpreted by the jury as vitiating the right to self-defense, and that's what the defense is concerned about, and that's why we object to the removal of that application paragraph.

The trial court denied Debrow's objections.

The jury charge that was submitted to the jury instructed, among other things, that:

> To decide the issue of self-defense, you must determine whether the State has proved, beyond a reasonable doubt, one of the following two elements. The elements are that —

> 1. the defendant did not believe his conduct was immediately necessary to protect himself against Rand Vanwert's use of unlawful deadly force; or

> 2. the defendant's belief was not reasonable.

You must all agree that the State has proved, beyond a reasonable doubt, either element 1 or element 2 listed above. You do not need to agree on which of these elements the State has proved.

If you find that the State has failed to prove, beyond a reasonable doubt, either element 1 or element 2 listed above, then you will find the defendant "not guilty."

If you all agree the State has proved, beyond a reasonable doubt, the offense of Murder, and you all agree the State has proved, beyond a reasonable doubt, either element l or element 2 listed above, then you shall find the defendant "Guilty."

Notably, this instruction substantially comports with the "Application of Law to Facts" provision in the pattern jury charge. *See* State Bar of Tex., TEXAS CRIMINAL PATTERN JURY CHARGES— CRIMINAL DEFENSES, PJC 9.23 (2024).

In Debrow's first issue, he complains that "the absence of an application paragraph, when properly preserved (as it was in the instant case), constitutes a reversible error." Debrow extensively quotes arguments made in his motion for new trial. Specifically, Debrow argues that "abstract paragraphs that lack a proper application paragraph have been found erroneous by the appellate courts." The State responds by piecing together Debrow's appellate arguments with those in his motion for new trial. According to the State, although Debrow references the "application paragraph," his true argument is that the trial court abused its discretion by overruling his objection to include an instruction that the Texas Pattern Jury Charge suggests should accompany the *presumption* paragraph.

The presumption provisions in the jury charge that was submitted to the jury instructed:

Under certain circumstances, the law creates a presumption that the defendant's belief that the deadly force he used was immediately necessary, was reasonable. A presumption is a conclusion the law requires you to reach if certain other facts exist.

Therefore, you must find the defendant's belief, that the deadly force he used was immediately necessary, was reasonable unless you find the state has proved, beyond a reasonable doubt, at least one of the following elements. The elements are that:

1. The defendant neither knew nor had reason to believe that Rand Vanwert was committing or attempting to commit murder; or

2.      The defendant provoked Rand Vanwert; or

3.      The defendant, at the time the deadly force was used, was engaged in criminal activity.

This paragraph largely comports with the "Presumption" provision in the pattern jury charge, *see id*., with one exception. That exception being:

> If you find the [S]tate has proved element 1, 2, or 3 listed above, the presumption does not apply and you are not required to find that the defendant's belief was reasonable.

> Whether or not the presumption applies, the [S]tate must prove, beyond a reasonable doubt, that self-defense does not apply to this case.

*Id*. The State references *Tuft v. State*, No. 14-22-00066-CR, 2023 WL 5622868, at *6–7 (Tex. App.—Houston [14th Dist.] Aug. 31, 2023, pet. ref'd), for its holding that such an omission "was not error."

## A.      Standard of Review

A claim of jury-charge error is reviewed in two steps. *See Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). We first determine whether there is error in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, then we analyze that error for harm. *Id*. If a defendant does not properly preserve error by objection, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

Texas Code of Criminal Procedure article 36.14 provides that the trial court "shall . . . deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case[.]" TEX. CODE CRIM. PROC. ANN. art. 36.14. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex.

Crim. App. 1996)). A proper jury charge therefore consists of an abstract statement of the law and the application paragraph(s). *See Vasquez v. State*, 389 S.W.3d 361, 366–67 (Tex. Crim. App. 2012). The abstract paragraphs of a jury charge serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Each statutory definition that affects the meaning of an element of the offense must be communicated to the jury. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009). The application paragraphs then apply the relevant law, the definitions found in the abstract portion of the charge, and general legal principles to the particular facts of the case. *Vasquez*, 389 S.W.3d at 366.

**B.     Applicable Law & Analysis**

We find *Tuft*, 2023 WL 5622868, at *6–7, instructive. In *Tuft*, the appellant argued that "the jury charge was erroneous because it did not instruct the jury that the State had the burden of persuasion to disprove self-defense regardless of whether the statutory presumption of reasonableness applied." *Id*. at *6. This is the argument that Debrow makes when he complains that the self-defense portion of the jury charge lacks an "application" paragraph — but it appears his actual complaint is a missing presumption paragraph. The court in *Tuft* noted that "[a]lthough an instruction of this type may have been preferable, it was not necessary based on the remaining instructions in the charge." *Id*. at *7 (citation omitted). It then provides:

> The jury charge given contains the various elements required to establish a claim of self-defense. The reasonableness of the actor's belief that force or deadly force was immediately necessary is only one element of the self-defense claim. And the presumption of reasonableness is just one method for establishing the reasonableness of a defendant's belief. The jury charge specifically states that "*if you have any reasonable doubt as to whether or not the defendant was acting in self-defense or in defense of [another] on said occasion and under the circumstances, then you should give the defendant the benefit of that doubt and say by your verdict, not guilty.*"

*Id*. (footnote omitted) (emphasis added).

The jury charge in the instant case includes all the provisions highlighted by *Tuft*. In an earlier portion of the jury charge, it instructs:

> The defendant is not required to prove self-defense. Rather, the State must prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct.
>
> "Reasonable belief" means a belief that an ordinary and prudent person would have held in the same circumstances as the defendant.
>
> "Deadly force" means force that is intended or known by the person using it to cause death or serious bodily injury or force that in the manner of its use or intended use is capable of causing death or serious bodily injury.
>
> If you find that the State has proved the offense beyond a reasonable doubt, you must next decide whether the State has proved that the defendant's conduct was not justified by self-defense.
>
> To decide the issue of self-defense, you must determine whether the State has proved, beyond a reasonable doubt, one of the following two elements. The elements are that —
>
> > 1. the defendant did not believe his conduct was immediately necessary to protect himself against Rand Vanwert's use of unlawful deadly force; or
> > 2. the defendant's belief was not reasonable.
>
> You must all agree that the State has proved, beyond a reasonable doubt, either element 1 or element 2 listed above. You do not need to agree on which of these elements the State has proved.
>
> *If you find that the State has failed to prove, beyond a reasonable doubt, either element 1 or element 2 listed above, then you will find the defendant "not guilty."*
>
> If you all agree the State has proved, beyond a reasonable doubt, the offense of Murder, and you all agree the State has proved, beyond a reasonable doubt, either element l or element 2 listed above, then you shall find the defendant "Guilty."

(Emphasis added). The emphasized portions in *Tuft* and the instant jury charge are similar. Accordingly, as in *Tuft*, "[r]eading the self-defense section of the charge as whole, the charge cannot be said to have placed the burden on [Debrow] for proving that he had acted in self-defense." *Id*. Therefore, we conclude that the trial court did not abuse its discretion in overruling

Debrow's objection to the omission of the presumption provision. Debrow's first issue is overruled.

## II. EXPERT TESTIMONY

In support of his defensive theory that Vanwert was the initial aggressor, Debrow called Megan Guerra, Vanwert's girlfriend at the time of his death, and Rebekah Roth, who dated Vanwert in 2012 and 2013, to testify about Vanwert's past steroid use. Guerra testified that she had seen Vanwert inject himself with steroids "only a couple of times." Additionally, Guerra characterized Vanwert's steroid use as "sporadic and inconsistent." Roth testified that she witnessed Vanwert using steroids in the bathroom. Roth recalled that she "[a]sked [Vanwert] what he was doing. He was open and honest about it, and I requested that he no longer did that in my home. I didn't want it around my daughter, and he stopped immediately."

Debrow sought to reinforce his initial aggressor theory by calling Dr. Beaver to opine that "individuals who use steroids are more likely to engage in violence." On voir dire examination outside of the jury's presence, Dr. Beaver testified that he utilized a national data set to study whether there was a correlation between steroid use and violence and aggression. The data set surveyed 6,823 males who were in middle or high school. The participants were asked, *inter alia*, whether they had used anabolic-androgenic steroids or other performance enhancing drugs (collectively referred to as "substances") (1) during the previous twelve months; and (2) during their lifetime. Dr. Beaver acknowledged that the survey combined steroids and other performance enhancing drugs, did not define "other performance enhancing drugs," did not differentiate between legally prescribed and illegally obtained substances, and did not differentiate between frequent and infrequent users of substances. Dr. Beaver also acknowledged that the study's results did not separate the effects of steroids from those of other performance enhancing drugs, and it did not differentiate between "aggression" and "violence." Dr. Beaver conceded that he was not a

medical professional, that he had no experience or expertise about the effects of steroids on the human body, and that he could not testify as to how he developed the violence analysis.

The State objected to the admissibility of Dr. Beaver's opinion that steroid use in the past year increases the likelihood of violence on relevancy and reliability grounds. The trial court sustained the State's objection, and it prohibited him from testifying. In Debrow's second issue, he complains that the trial court abused its discretion by sustaining the State's objections to the Dr. Beaver's opinion. Generally, Debrow argues that this testimony supported his self-defense theory that Vanwert was prone to violence because of his past steroid use.

Under the abuse-of-discretion standard of review, we will uphold the trial court's decision as long as it was within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). We will affirm the trial court's evidentiary ruling if it is correct under any applicable theory of law and is reasonably supported by the record. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007).

Texas Rule of Evidence 702 governs the admissibility of expert testimony. TEX. R. EVID. 702. It allows a witness who is "qualified as an expert by knowledge, skill, experience, training or education" to "testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." *Id*. Under Rule 702, three conditions must be met before expert testimony is admissible: (1) the expert must be qualified; (2) the evidence must be reliable; and (3) the evidence must be relevant. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

To establish relevance, the expert's testimony must assist the trier of fact and be sufficiently tied to the case's facts. *Tillman v. State*, 354 S.W.3d 425, 438 (Tex. Crim. App. 2011). Even when the general subject matter is within the average juror's comprehension, a trial court need not exclude expert testimony so long as the witness has some specialized knowledge on the topic that

will "assist" the jury. *Id*. at 441 (citing *Coble v. State*, 330 S.W.3d 253, 288 (Tex. Crim. App. 2010)). In other words, the question under Rule 702 is not whether the jurors know something about the subject but whether the expert can expand their understanding in a relevant way. *Id*. Rule 702 only requires that expert testimony meet the simple requirement of being "helpful" to the jury on an issue in dispute, by either validating or calling into question the jurors' own inclinations, including prompting the jurors to reconsider their preconceived notions. *Jordan v. State*, 928 S.W.2d 550, 556 (Tex. Crim. App. 1996). And the relevance, or "fit," of the expert's testimony about principles and theories can be addressed by the expert's discussion of hypotheticals mirroring the case's facts. *Tillman*, 354 S.W.3d at 441.

In this case, the trial court may have found that Dr. Beaver's testimony was irrelevant because it did not "fit" the facts of the case. Guerra testified that she had seen Vanwert inject himself with steroids "only a couple of times," and she characterized his steroid use as "sporadic and inconsistent." Guerra's testimony comports with Roth's recollection that she had witnessed Vanwert use steroids on only one occasion and that "he no longer did that in my home." The trial court may have found that Dr. Beaver's concession that the study did not differentiate between frequent and infrequent users of substances means that it did not "fit" Vanwert's "sporadic and inconsistent" steroid use, and therefore, it would not assist the jury in assessing Debrow's self-defense theory. *Tillman*, 354 S.W.3d at 438. Moreover, Debrow does not highlight any evidence that Vanwert used performance enhancing drugs — with or without steroids — or whether Vanwert used legally prescribed or illegally obtained steroids on the times that he used steroids. These distinguishing factors may have reinforced the trial court's finding that Dr. Beaver's opinion

did not fit the facts of the case. Therefore, the trial court did not abuse its discretion in sustaining the State's relevancy objection.[1] Debrow's second issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

Rebeca C. Martinez, Chief Justice

DO NOT PUBLISH

---

[1] In light of this holding, we need not address Debrow's contention that the trial court abused its discretion in sustaining the State's reliability objection. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *see also Winegarner*, 235 S.W.3d at 790 (providing that we must affirm the trial court's evidentiary ruling if it is correct under any applicable theory of law and is reasonably supported by the record).